Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:    (916) 443-6911
Facsimile:    (916) 447-8336
E-Mail:    mark@markmerin.com
          paul@markmerin.com

Attorneys for Plaintiff
ALEXIS HOOPER and the class of similarly
situated persons she seeks to represent

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ALEXIS HOOPER and the class of similarly situated persons she seeks to represent,<br><br>Plaintiffs,<br><br>vs.<br><br>ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

This action arises from correctional officers' coordinated use of excessive force against a class of inmates at the Central California Women's Facility on August 2, 2024.

## JURISDICTION & VENUE

1. This Court has original jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state claims under 28 U.S.C. § 1367.

1

2. Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3. Intradistrict venue is proper in the Fresno Division of the Eastern District of California pursuant to Eastern District of California Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Madera, California.

## EXHAUSTION

4. ALEXIS HOOPER and several similarly situated class members submitted CDCR 602 grievance forms to the State of California and California Department of Corrections & Rehabilitation related to the August 2, 2024, incident giving rise to the claims in this action, and exhausted the appeal process.

## PARTIES

5. Plaintiff ALEXIS HOOPER is a resident of the County of Madera, California.

6. Defendant ANISSA DE LA CRUZ is, and at all times material herein was, the warden of the Central California Women's Facility (CCWF) in Chowchilla, California, employed by the State of California and California Department of Corrections & Rehabilitation, acting within the scope of employment and under color of state law. Defendant ANISSA DE LA CRUZ is sued in an individual capacity.

7. Defendant ISIDRO ARROYO is, and at all times material herein was, a sergeant-rank correctional officer at the Central California Women's Facility (CCWF) in Chowchilla, California, employed by the State of California and California Department of Corrections & Rehabilitation, acting within the scope of employment and under color of state law. Defendant ISIDRO ARROYO is sued in an individual capacity.

8. Defendant C. MENDOZA is, and at all times material herein was, a captain-rank correctional officer at the Central California Women's Facility (CCWF) in Chowchilla, California, employed by the State of California and California Department of Corrections & Rehabilitation, acting within the scope of employment and under color of state law. Defendant C. MENDOZA is sued in an individual capacity.

2

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

9. Defendant MICHAEL FELIX is, and at all times material herein was, a sergeant-rank correctional officer at the Central California Women's Facility (CCWF) in Chowchilla, California, employed by the State of California and California Department of Corrections & Rehabilitation, acting within the scope of employment and under color of state law. Defendant MICHAEL FELIX is sued in an individual capacity.

10. Defendant V. RAMOLETE is, and at all times material herein was, a correctional officer at the Central California Women's Facility (CCWF) in Chowchilla, California, employed by the State of California and California Department of Corrections & Rehabilitation, acting within the scope of employment and under color of state law. Defendant V. RAMOLETE is sued in an individual capacity.

11. Defendant BECERRA is, and at all times material herein was, a correctional officer at the Central California Women's Facility (CCWF) in Chowchilla, California, employed by the State of California and California Department of Corrections & Rehabilitation, acting within the scope of employment and under color of state law. Defendant BECERRA is sued in an individual capacity.

12. Defendants DOE 1 to 60 are and/or were agents or employees of the State of California and/or California Department of Rehabilitation & Corrections, acting within the scope of that agency or employment and under color of state law. Defendants DOE 1 to 60's true and correct names are not now known and they are identified by their fictitious names. Defendants DOE 1 to 60's fictitious names will be substituted for their true and correct names when ascertained.

## GENERAL ALLEGATIONS

13. At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### PREA Policy

14. In 2003, Congress passed the Prison Rape Elimination Act (PREA) with the express purpose of, *inter alia*, "establish[ing] a zero-tolerance standard for the incidence of prison rape in prisons in the United States[.]" 34 U.S.C. § 30302(1).

15. In 2006, the State of California and California Department of Corrections & Rehabilitation (CDCR) adopted a PREA policy which declared a "zero tolerance for sexual violence, staff sexual misconduct and sexual harassment in its institutions," and that all "sexual violence, staff

3

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

sexual misconduct, and sexual harassment is strictly prohibited." CDCR Operations Manual, Chapter 5, Article 44 (Prison Rape Elimination Policy) § 54040.1. Inmates "may report violations of [PREA policy] to any staff member verbally or in writing, utilizing the Inmate Appeals Process, through the sexual assault hotline or through a third party," *id*. § 54040.7, including "[a]ny threatened, coerced, attempted, or completed sexual contact, assault or battery between staff and offenders," *id*. § 54040.3.

**Central California Women's Facility (CCWF)**

16. Hundreds of women have filed lawsuits against the State of California, CDCR, and CDCR employees alleging they were sexually assaulted by correctional officers employed at the Central California Women's Facility (CCWF), *CDCR Women's Facilities Cases*, Judicial Council Coordination Proceedings No. 5276 (Sacramento Cnty. Super. Ct.), and millions of dollars in damages have been paid to settle many of these claims, *e.g.*, *Doe v. Rodriguez*, No. 1:22-cv-01569-JLT-SAB (E.D. Cal.); *Roe v. Rodriguez*, No. 1:22-cv-01574-JLT-SAB (E.D. Cal.); *Doe #2 v. State of California*, No. 1:23-cv-00869-JLT-SAB (E.D. Cal.); *Doe #3 v. State of California*, No. 1:23-cv-00868-JLT-SAB (E.D. Cal.); *Doe #4 v. State of California*, No. 1:23-cv-01174-JLT-SAB (E.D. Cal.); *Doe #5 v. State of California*, No. 1:23-cv-01226-JLT-SAB (E.D. Cal.); *Doe #6 v. State of California*, No. 1:23-cv-01339-ADA-SAB (E.D. Cal.); *Doe #7 v. Rodriguez*, No. 1:24-cv-01047-JLT-SKO (E.D. Cal.); *Doe #8 v. Rodriguez*, No. 1:24-cv-01130-JLT-BAM (E.D. Cal.).

17. "Delta Dogs" is a criminal gang composed of correctional officers from CCWF's D Yard who unlawfully intimidate and harass inmates through the use of physical, sexual and verbal abuse, false Rules Violations Reports (RVR/115), administrative segregation, and retaliation. The Delta Dogs practices a "Code of Silence" to conceal misconduct. Frequently, this includes falsely charging inmates with criminal violations or CDCR rules violations to punish innocent inmates and increase their period of confinement.

18. Some Delta Dogs members wear a badge or emblem of a pit bull on their CDCR-issued uniforms to signify their inclusion in the gang and to intimidate inmates.

19. Defendant ISIDRO ARROYO, a correctional sergeant at CCWF, is the leader of the Delta Dogs prison gang, and Defendants C. MENDOZA, V. RAMOLETE, and BECERRA are members of the Delta Dogs.

4

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

20. For several months prior to August 2, 2024, Defendant ISIDRO ARROYO told inmates to "stop filing" PREA complaints against CCWF correctional officers. For example:

(a) Defendant ISIDRO ARROYO told inmate Antoinette Yancey, who serves on the Inmate Advisory Council (IAC), that she needed to "get the inmates under control" and that "if she did not get the inmates to stop filing PREA complaints against his officers" he was going to search every cell in Building 513, which houses 159 inmates, and throw away their property. Defendant ISIDRO ARROYO also told Antoinette Yancey that he would institute privilege status restriction (PSR) which would force every inmate into lockdown and restrict privileges, including the ability to leave cells, canteen and family care box access, outside/dayroom breaks, laundry, and group activities.

(b) Defendant ISIDRO ARROYO told inmate Donyette Clark that he was unhappy about inmates filing PREA complaints against officers and, if the PREA complaints did not stop, he would search all of the cells in Building 513 and inmates would lose property as a result.

(c) Defendant ISIDRO ARROYO told inmate Tanesha Randolph and other inmates housed in Building 513, "If you don't stop filing PREA, this unit is going First Watch." "First Watch" meant that the inmates would have no movement at CCWF, no canteen services or programming, and would be confined to their cells for 24 hours a day, losing all privileges.

21. Defendant ISIDRO ARROYO's threats to inmates did not stop CCWF inmates from filing PREA complaints against CCWF correctional officers.

22. Defendant ISIDRO ARROYO sought permission from captain Castillo to retaliate and search all of the cells in Building 513. Defendant ISIDRO ARROYO told captain Castillo the reason he wanted to search the cells was to send a message to the inmates that PREA complaints should not be filed against correctional officers at CCWF. Captain Castillo denied Defendant ISIDRO ARROYO's request because it would constitute prohibited retaliation.

23. Defendant ISIDRO ARROYO sought permission from Defendant C. MENDOZA, a captain, to place Building 513 in "PRS" or "First Watch" and search every cell in Building 513 for the purpose of sending a message to inmates that PREA complaints should not be filed against correctional officers. Defendant C. MENDOZA granted Defendant ISIDRO ARROYO's request.

24. Defendants ISIDRO ARROYO and C. MENDOZA met with Defendant ANISSA DE LA

5

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

CRUZ, the CCWF warden, informed her of the reasons why they wanted to search all of the cells in 513. Defendant ANISSA DE LA CRUZ agreed that a search of all of the cells in 513 was warranted and authorized the search.

25. Defendant ISIDRO ARROYO summoned fellow correctional officers from Pleasant Valley State Prison (PVSP) and Valley State Prison (VSP) to assist in the search, with Defendant ANISSA DE LA CRUZ's permission. Approximately 70 correctional officers were present to search Building 513.

**August 2, 2024**

26. On August 2, 2024, Defendants DOE 1 to 60, correctional officers, removed every inmate in Building 513 (159 inmates) from her cell including Plaintiff ALEXIS HOOPER.

27. Defendant ISIDRO ARROYO directed the inmates to the cafeteria.

28. Defendant ISIDRO ARROYO ordered Defendants DOE 1 to 60 to begin the process of searching every cell in Building 513.

29. The searches went on for several hours and inmates were not provided necessary medications, food, or water because they were confined to the cafeteria.

30. Defendants ISIDRO ARROYO and C. MENDOZA ordered cafeteria workers not to feed the inmates.

31. Defendant DOE 1, a sergeant, arrived at the cafeteria and informed the inmates that their personal property was being thrown into the trash, stating, "They are throwing your shit out," causing the inmates to become upset.

32. Defendants DOE 1 to 60 threw-away inmates' personal property in violation of CDCR rules, and inmates saw their belongings being wheeled away in trash carts.

33. An inmate passed out due to the heat and not having received her medications and food.

34. Inmates called out for medical assistance and an alarm was activated.

35. Defendants ISIDRO ARROYO and C. MENDOZA locked down the entire prison and summoned every correctional officer on duty at CCWF to respond to the cafeteria.

36. The correctional officers, including Defendants ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60, formed a skirmish line around the

6

inmates and began advancing in a tactical formation while the inmates huddled in a circle and begged officers not to hurt them.

37. Defendant ISIDRO ARROYO yelled orders at the correctional officers while the inmates begged for medical providers to assist the inmate who had lost consciousness.

38. Defendant ISIDRO ARROYO ordered correctional officers to turn-off body-worn cameras.

39. Defendant ISIDRO ARROYO tapped a correctional officer on the shoulder and gave him a command to start spraying the inmates with pepper spray.

40. The inmates, including Plaintiff ALEXIS HOOPER and the class of inmates she seeks to represent, were sprayed with pepper spray by correctional officers at Defendant ISIDRO ARROYO's command and directions, while compliant and non-threatening.

41. Defendant ISIDRO ARROYO threw a tear gas grenade at the group of inmates, and ordered other correctional officers to throw tear gas grenades at the group of inmates.

42. The inmates were completely covered in pepper spray as officers emptied entire cans of pepper spray directly into inmates' faces at close-range.

43. The correctional officers ordered inmates to step forward and, when inmates complied with the correctional officers' commands, they were doused with pepper spray.

44. Defendant ISIDRO ARROYO commanded correctional officers with batons to strike and beat inmates.

45. The correctional officers complied by beating at least two defenseless inmates.

46. Defendants ISIDRO ARROYO and C. MENDOZA yelled orders for the correctional officers to continue spraying pepper spray and deploying tear gas grenades at the group of inmates that were already down on the floor after hearing the alarm.

47. Defendant ISIDRO ARROYO threw another tear gas grenade and at the group of inmates, and again ordered other correctional officers to continue throwing additional tear gas grenades at the inmates.

48. The correctional officers again complied with Defendant ISIDRO ARROYO's command and threw additional tear gas grenades at the group of inmates.

7

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

49. The correctional officers had no justification for deploying force against the group of inmates and provided no warnings prior to doing so.

50. The correctional officers deploying pepper spray and tear gas all wore gas masks to protect themselves from the harmful irritants.

51. Several of the inmates were having seizures and other medical emergencies due to being covered in pepper spray and tear gas from grenades which filled the room with tear gas.

52. Defendants ISIDRO ARROYO and C. MENDOZA did not allow any medical providers into the cafeteria to assist the inmates who required medical attention.

53. The inmates who begged for medical assistance, for themselves or others, were told, "Shut the fuck up," and then viciously attacked again at Defendants ISIDRO ARROYO and C. MENDOZA's orders.

54. Defendants ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60, including all correctional officers involved in the assaults on the group of inmates, failed to utilize appropriate policies, training, standards, and procedures, including California Commission on Peace Officer Standards and Training (POST) Learning Domain 20 (Use of Force/Deescalation), Learning Domain 24 (Handling Disputes/Crowd Control), Learning Domain 31 (Custody), Learning Domain 35 (Firearms/Chemical Agents); and CDCR Operations Manual, Chapter 5, Article 2 (Use of Force).

### Alexis Hooper

55. Plaintiff ALEXIS HOOPER was an inmate at CCWF on August 2, 2024.

56. On August 2, 2024, in the morning, Plaintiff ALEXIS HOOPER was told by correctional officers that all inmates were going to the cafeteria because their cells were being searched.

57. Plaintiff ALEXIS HOOPER and all other inmates from Building 513 were taken by correctional officers to the cafeteria.

58. Plaintiff ALEXIS HOOPER remained in the cafeteria for about four hours.

59. Plaintiff ALEXIS HOOPER was in the group of inmates that was attacked with pepper spray and tear gas grenades thrown by correctional officers.

60. Plaintiff ALEXIS HOOPER saw numerous correctional officers enter the cafeteria and

8

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

deploy pepper spray and tear gas grenades against the groups of inmates including herself.

61. Plaintiff ALEXIS HOOPER saw Defendant ISIDRO ARROYO issuing commands to correctional officers, including yelling, "Get them!," "Shoot them!," and "Throw bombs!"

62. Plaintiff ALEXIS HOOPER was pepper sprayed and subjected to tear gas while complying with all orders issued by correctional officers.

63. Prior to the correctional officers' assault in the cafeteria, Plaintiff ALEXIS HOOPER was diagnosed with epilepsy and prescribed medications (Keppra) to prevent seizures.

64. During the correctional officers' assault in the cafeteria, Plaintiff ALEXIS HOOPER had a seizure and was lying on the floor.

65. Plaintiff ALEXIS HOOPER was pepper sprayed while lying on the floor and having a seizure.

66. Several of Plaintiff ALEXIS HOOPER's cellmates told correctional offices, "Help her!" In response, correctional officers said, "Leave her alone!" and "Don't touch her!"

67. After the correctional officers' assault in the cafeteria, correctional officers took Plaintiff ALEXIS HOOPER and other inmates outside of the cafeteria. Plaintiff ALEXIS HOOPER's arms were bound with zip-ties, as were other inmates who were removed from the cafeteria.

68. Plaintiff ALEXIS HOOPER and other inmates with hands bound with zip-ties were sat-down on the ground outside the cafeteria.

69. The correctional officers, including Defendants DOE 1 to 30, surrounded the group of zip-tied inmates sitting outside, including Plaintiff ALEXIS HOOPER, and again deployed pepper spray and tear gas against them, while they were compliant and non-threatening.

70. The correctional officers yelled various insults while assaulting the group of inmates outside, for example, "Stupid bitch!," "This is your fault!," and "This is what happens in prison!"

71. After the correctional officers' assault in the cafeteria and outside, Plaintiff ALEXIS HOOPER was transported to a hospital in a non-emergency fashion.

72. Later, Plaintiff ALEXIS HOOPER was returned to CCWF.

73. Plaintiff ALEXIS HOOPER filed a CDCR 602 grievance. Plaintiff ALEXIS HOOPER has not received a response, months after the grievance was filed.

9

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

**Post-Incident**

74. After the events of August 2, 2024, Defendant ANISSA DE LA CRUZ ordered the inmates from Building 513 locked-down for several days and restricted or cutoff all tablet use, yard time, and shopping.

75. Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and other correctional officers attempted to cover-up the criminal acts by issuing RVR/115s against the inmates who had been assaulted by correctional officers. The RVR/115s were issued to inmates who underwent a CDCR 7219 examination after having been injured and were designed to exonerate correctional officers by painting them as victims.

76. CDCR Office of Internal Affairs (OIA) personnel came to CCWF.

77. Defendant ANISSA DE LA CRUZ and CCWF leadership, including Defendants DOE 31 to 40, did not allow OIA to view recordings and footage taken from assault on August 2, 2024.

78. CDCR, Defendant ANISSA DE LA CRUZ, and CCWF leadership have not issued any discipline or recommended criminal charges against any correctional officers involved in the August 2, 2024, assault on inmates, including Defendants ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60.

79. Defendants ISIDRO ARROYO and BECERRA were transferred from CCWF to another prison where they continue to abuse and mistreat inmates.

80. On August 21, 2024, from 9:45 a.m. to 11:45 a.m., Defendant ANISSA DE LA CRUZ held a "Trauma Event" to talk about August 2, 2024, with the inmates in Building 513. The flyer for the event was advertised as a day to "Release and Heal"—come together and heal from trauma that occurred on August 2, 2024.

81. At the meeting, Defendant ANISSA DE LA CRUZ admitted that she was one of the officials who orchestrated the assaults on August 2, 2024, and refused to provide inmates with any information as to the unlawful and unconstitutional uses of force that occurred. Defendant ANISSA DE LA CRUZ stated "it was wrong" what she and correctional officers did to inmates but that it would not be in her own "best legal interests" to discuss the mistreatment of inmates or misconduct committed by CCWF staff on August 2, 2024.

10

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

82. At the meeting, captain Williams said that inmates "need to stop talking about what happened" because it was "in the past," and needed to "move on to determine what we are going to do better for the future."

83. During the meeting, about half of the inmates present attending walked-out during captain Williams' attempts to whitewash the assaults.

84. In the CCWF Program Office at D Program, correctional officers put up a sign with a picture of Defendant ISIDRO ARROYO and the writing, "Save a life, Bring back Arroyo." Defendant ANISSA DE LA CRUZ and CCWF leadership permit the sign and message to remain where it is visible to correctional officers and inmates.

## CLASS ACTION ALLEGATIONS

85. Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60 deprived Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent of their civil and constitutional rights including, but not limited to, the right to be free from excessive force.

86. Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent were injured as a resulted of a policy or custom, including a lack of proper training and/or ratification by policymaking officials, including Defendants ANISSA DE LA CRUZ and DOE 1 to 60.

87. Plaintiff ALEXIS HOOPER seeks to represent a class of similarly situated persons who were subject to unconstitutional excessive force by correctional officers at CCWF on August 2, 2024, including through the deployment of pepper spray and tear gas.

88. Pursuant to Federal Rule of Civil Procedure 23(a)(1), the members of the class are so numerous that joinder of all members is impractical, as there are approximately 159 class members—*i.e.*, the inmates housed in CCWF Building 513 who were subject to excessive force on August 2, 2024.

89. Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are many questions of fact and law common to the class, including whether Defendants ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60's use of force against Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent constitutes excessive force under the Eighth Amendment to the United States Constitution.

90. Pursuant to Federal Rule of Civil Procedure 23(a)(3), Plaintiff ALEXIS HOOPER's claims are typical of the class she seeks to represent, and she shares the same interests and suffered the same types of injuries as the class, where the alleged claims are based upon similar facts and the same legal theories.

91. Pursuant to Federal Rule of Civil Procedure 23(a)(4), Plaintiff ALEXIS HOOPER is prepared fairly and adequately to protect the interests of the class, and her interests are consistent with, and not antagonistic to, the interests of the class.

92. The identities of class members—*i.e.*, inmates present in CCWF Building 513 on August 2, 2024—can be ascertained from records maintained by the State of California and CDCR.

93. Pursuant to Federal Rule of Civil Procedure 23(b)(1)(A), class members' individual prosecution of separate actions would create a risk that inconsistent or varying adjudications which would establish incompatible standards of conduct.

94. Pursuant to Federal Rule of Civil Procedure 23(b)(1)(B), class members' individual prosecution of separate actions would substantially impair or impede other class members' ability to protect their interests.

95. Pursuant to Federal Rule of Civil Procedure 23(b)(3), the questions of law and fact, as alleged above, are common to the class and predominate over any questions affecting only individual members.

96. Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action is superior to other available methods for the fair and equitable adjudication of the controversy between the parties.

97. Pursuant to Federal Rule of Civil Procedure 23(b)(3)(A), class members' interests in individually controlling the prosecution of a separate action is low, where most class members would be unable individually to prosecute any action—for example, where the amounts at stake for members of the class may be so small that separate suits would be impracticable, or where most class members may be unable to find counsel to represent them.

98. Pursuant to Federal Rule of Civil Procedure 23(b)(3)(B), there is no other class action litigation concerning the controversy at issue in this action.

99. Pursuant to Federal Rule of Civil Procedure 23(b)(3)(C), it is desirable to concentrate all

12

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

litigation in one forum because it will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple forums.

100. Pursuant to Federal Rule of Civil Procedure 23(b)(3)(D), there are not likely to be significant difficulties in managing a class action in this case.

101. Pursuant to Federal Rule of Civil Procedure 23(c)(2), upon certification, Plaintiff ALEXIS HOOPER and class counsel contemplate that individual notices will be given to class members at last-known addresses by first-class U.S. mail, or by appropriate publication, informing class members of: (1) the pendency of the class action and the issues common to the class; (2) the nature of the action; (3) the right to "opt-out" of the action within a given time, in which event the class member will not be bound by a decision rendered in the class action; (4) the right, if the class member does not "opt-out," to be represented by the class member's own counsel and to enter an appearance in the case, otherwise the class member will be represented by Plaintiff ALEXIS HOOPER and class counsel; and (5) the right, if the class member does not "opt-out," to share in any recovery in favor of the class and, conversely, to be bound by any judgment on the common issues adverse to the class.

## FIRST CLAIM

### Excessive Force

### (U.S. Const. Amend. VIII; 42 U.S.C. § 1983)

102. Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent assert this Claim against Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60.

103. The allegations of the preceding paragraphs 1 to 101 are realleged and incorporated, to the extent relevant, as if fully set forth in this Claim.

104. *Individual Liability*: Defendants ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60 used—or, failed to intervene in and/or were integral participants to—excessive and unnecessary force for the purpose of causing harm against Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent, in violation of the Eighth Amendment to the United States Constitution.

105. *Supervisory Liability*: Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C.

MENDOZA, MICHAEL FELIX, and DOE 1 to 60 maintained policies or customs of action and inaction resulting in harm to Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent, in violation of the Eighth Amendment to the United States Constitution.

106. Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to rights, or were wantonly or oppressively done.

107. Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent were injured as a direct and proximate result of Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60's actions and inactions, entitling them to receive compensatory, nominal, and punitive damages against Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60.

WHEREFORE, Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent pray for relief as hereunder appears.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent seek Judgment as follows:

1. For class certification of a damages class under Federal Rule of Civil Procedure 23(b)(3), including appointment of class counsel and Plaintiff ALEXIS HOOPER as class representative;

2. For an award of compensatory, general, special, and nominal damages (including under federal and state law) against Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60, according to proof at trial;

3. For an award of exemplary/punitive damages against Defendants ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or

14

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

constituted oppression and/or malice resulting in great harm;

4. For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and any other statute or law as may be applicable;

5. For interest; and

6. For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: May 22, 2025                                 Respectfully Submitted,

By: _____
   Mark E. Merin
   Paul H. Masuhara
   LAW OFFICE OF MARK E. MERIN
   1010 F Street, Suite 300
   Sacramento, California 95814
   Telephone: (916) 443-6911
   Facsimile: (916) 447-8336

   Attorneys for Plaintiff
   ALEXIS HOOPER and the class of similarly
   situated persons she seeks to represent

15

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____

# JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiff ALEXIS HOOPER and the class of similarly situated persons she seeks to represent.

Dated: May 22, 2025

Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiff
ALEXIS HOOPER and the class of similarly situated persons she seeks to represent

16

**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL**
*Hooper v. De La Cruz*, United States District Court, Eastern District of California, Case No. _____