Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336
E-Mail: mark@markmerin.com
paul@markmerin.com

Attorneys for Plaintiff
ALEXIS HOOPER and the class of similarly situated persons she seeks to represent

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ALEXIS HOOPER and the class of similarly situated persons she seeks to represent,<br><br>Plaintiffs,<br><br>vs.<br><br>ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60,<br><br>Defendants. | Case No. 1:25-cv-00610-JLT-HBK<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 4, 2026<br>Time: 1:00 p.m.<br>Location: Robert E. Coyle U.S. Courthouse, 2500 Tulare Street, Fresno, CA 93721<br>Courtroom: 2 (8th Floor)<br>Magistrate Judge: Hon. Helena M. Barch-Kuchta |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. STATEMENT OF RELEVANT FACTS AND PROCEEDINGS ........ 1

A. RELEVANT FACTS ........ 1

B. RELEVANT PROCEEDINGS ........ 2

III. TERMS OF THE PROPOSED SETTLEMENT ........ 2

A. COMPENSATION ........ 2

B. CLAIMS PROCESS ........ 3

IV. ARGUMENT ........ 4

A. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........ 4

1. Rule 23(a) ........ 4

a. Numerosity ........ 4

b. Commonality ........ 5

c. Typicality ........ 7

d. Adequacy of Representation ........ 8

2. Rule 23(b)(3) ........ 8

a. Predominance ........ 9

b. Superiority ........ 10

3. Rule 23(c)(2) ........ 11

B. PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE ........ 12

1. Negotiation of the Settlement Agreement ........ 12

2. Amount Recovered and Distribution to the Class ........ 13

V. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## CASES


*Anderson v. Garner*, 22 F. Supp. 2d 1379 (N.D. Ga. 1997) ....7

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ....5

*Bangert v. County of Placer*, 2019 U.S. Dist. LEXIS 14287 (E.D. Cal. Jan. 25, 2019)....1

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)....11

*Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002) ....5

*Coburn v. City of Sacramento*, 2020 U.S. Dist. LEXIS 238878 (E.D. Cal. Dec. 17, 2020)....7

*Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ....4

*Diggs v. Mici*, 2024 U.S. Dist. LEXIS 181072 (D. Mass. Sep. 30, 2024)....10

*Fobbs v. Hunt*, 2021 U.S. Dist. LEXIS 87094 (E.D. Va. May 5, 2021)....6

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013) ....6

*Gonzalez v. GEO Grp., Inc.*, 2025 U.S. Dist. LEXIS 206686 (C.D. Cal. July 31, 2025)....6, 9, 11

*Halliburton Co. v. Erica P. John Fund*, 573 U.S. 258 (2014)....1

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....5, 7, 8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....7

*Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018) ....1

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ....4

*Hill-Colbert v. City of Roseville*, 2025 U.S. Dist. LEXIS 71693 (E.D. Cal. Apr. 14, 2025) 4, 5, 8, 10, 11, 12, 13

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)....4

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d. 1078 (N.D. Cal. 2007)....12, 13

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ....8, 9

*Lackey v. SDT Waste & Debris Servs., LLC*, 2014 U.S. Dist. LEXIS 136181 (E.D. La. Sep. 26, 2014) ..12

*Lewis v. Starbucks Corp.*, 2008 U.S. Dist. LEXIS 83192 (E.D. Cal. Sep. 10, 2008)....11

*Logan v. City of Pullman*, 2005 U.S. Dist. LEXIS 37811 (E.D. Wash. Dec. 7, 2005)....7, 9

*Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036 (9th Cir. 2012)....7

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007). 7, 8, 9, 10

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ....5

*Pataky v. Brigantine, Inc.*, 2018 U.S. Dist. LEXIS 101663 (S.D. Cal. June 18, 2018)....12

*Powers v. McDonough*, 163 F.4th 1162 (9th Cir. 2025)....5

*Redmond v. Bigelow*, 2014 U.S. Dist. LEXIS 83694 (D. Utah June 17, 2014)....6, 10

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)....12

*Spain v. Procunier*, 408 F. Supp. 534 (N.D. Cal. 1976)....5

*Stewart v. Luna*, 2025 U.S. Dist. LEXIS 153777 (C.D. Cal. Aug. 6, 2025)....6, 9

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009)....12, 13

*Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013)....9

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)....9, 11

RULES

Fed. R. Civ. P. 23(a)....4

Fed. R. Civ. P. 23(a)(1)....4

Fed. R. Civ. P. 23(a)(2)....5

Fed. R. Civ. P. 23(a)(3)....7

Fed. R. Civ. P. 23(a)(4)....8

Fed. R. Civ. P. 23(b)(3)....8, 10

Fed. R. Civ. P. 23(c)(2)(B)....11

Fed. R. Civ. P. 23(e)....4

# I. INTRODUCTION

Alexis Hooper and the class of similarly situated persons she seeks to represent (collectively, "Plaintiffs") seeks the Court's preliminary approval of a class action settlement; certification of a settlement class; and authorization to issue and deliver notices and claims forms to settlement class members.

# II. STATEMENT OF RELEVANT FACTS AND PROCEEDINGS

## A. RELEVANT FACTS

Generally, this action arises from the August 2, 2024, allegations of in-custody assault of numerous prisoners in the custody of the California Department of Corrections & Rehabilitation (CDCR) by correctional officers at the Central California Women's Facility (CCWF) in Chowchilla, California.

On August 2, 2024, correctional officers removed approximately 142 inmates in Building 513 from their cells and directed the inmates to the cafeteria. Once at the cafeteria, a supervisory officer allegedly informed the inmates that their personal property was being thrown into the trash, stating, "They are throwing your shit out," causing the inmates to become upset and protest. Officers allegedly formed a skirmish line around the inmates and began to deploy less-lethal munitions against the inmates, including pepper-spray and tear-gas. Declaration of Mark E. Merin ("Merin Decl.") ¶ 2.[1]

Officers removed the inmates to an area outside of the cafeteria. Officers allegedly denied the inmates access to medical treatment, even though they had been doused with chemicals and were suffering from the application of chemical irritants. The inmates were forced to remain outside for several hours following the incident. Merin Decl. ¶ 3.

[1] Generally, "plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund*, 573 U.S. 258, 275 (2014). Accordingly, Plaintiffs' counsel proposed supporting this motion with evidence, including surveillance camera recordings of the relevant in-custody assault and the prison warden's post-incident email to prison staff ratifying that the assault was proper. However, Defendants objected to the filing of these materials because they were produced under a protective order and designated by Defendants as "Confidential" and/or "Attorneys' Eyes Only." Plaintiffs disagree. *See*, *e.g.*, *Bangert v. County of Placer*, 2019 U.S. Dist. LEXIS 14287, at *7 (E.D. Cal. Jan. 25, 2019) ("video footage," "various photos," and "incident report" related to in-custody assault by jail staff not subject to protection); *see also Harmon v. City of Santa Clara*, 323 F.R.D. 617, 623 (N.D. Cal. 2018) ("The fact that [] million[s] in public funds were spent to settle the case further implicates a public interest in seeing the video."). If the Court finds evidentiary support for this motion is necessary, Plaintiffs can produce it.

After the events of August 2, 2024, the inmates from Building 513 locked-down for several days and restricted privileges including tablet use, yard time, and shopping. Additionally, officers allegedly issued false administrative violations (RVR/115) against the inmates which were designed to exonerate officers by portraying them as victims.

On August 3, 2024, the next day, CCWF warden Anissa De La Cruz sent an email to all staff commending the prison staff for their actions during the assault. Merin Decl. ¶ 4.

**B. RELEVANT PROCEEDINGS**

On May 22, 2025, Alexis Hooper and the class of similarly situated persons she seeks to represent (collectively, "Plaintiffs") filed the currently-operative Complaint against Anissa De La Cruz, Isidro Arroyo, C. Mendoza, Michael Felix, V. Ramolete, and E. Becerra (collectively, "Defendants"). ECF No. 1.

On July 27, 2026, the parties reached agreement on the principal terms of a class action settlement, subject to Court approval, which, if granted, would resolve all claims and defenses alleged by all parties to this action. ECF No. 37.

On July 29, 2026, the Court filed an order granting stay of action, pending resolution of motions for preliminary and final approval of the class action settlement. ECF No. 38.

Now, Plaintiffs move for preliminary approval of the class action settlement.

## III. <u>TERMS OF THE PROPOSED SETTLEMENT</u>

**A. COMPENSATION**

The Settlement Agreement is attached hereto. Merin Decl. Exhibit ("Ex.") A. It provides that each of the 142 class members who were removed from their cells in unit 513 of the Central California Women's Facility and taken to the cafeteria where they were subjected to tear gas, were pepper-sprayed and were then zip-tied and removed to the facility's yard where they were again tear-gassed and pepper-sprayed will be entitled to receive an equal share of approximately $7,450,000 allocated for settlement. Class members who, by virtue of their prior condition and/or receipt of medical attention, believe they are entitled to enhanced compensation and who submit claim forms supporting their entitlement, will receive approximately 25% more than those class members who do not submit claim forms, opting instead for the standard payment.

Defendants have stipulated, subject to Court approval, to class counsel receiving an award of 25% of the common fund for attorneys' fees and reimbursement of costs; $25,000 as an incentive payment to the class representative; and an amount of approximately $25,000 for claims administration.

**B. CLAIMS PROCESS**

If the Court preliminarily approves the settlement, notice of settlement will be distributed as provided in the Settlement Agreement and claim forms will be made available for completion and return by the claim deadline. The proposed Class Notice and Claim Form are attached hereto. Merin Decl. Ex. A @ Attachment 1 (Claim Form) & Attachment 3 (Class Notice).

Only class members who claim enhanced compensation will need to submit a claim form. No claim form is needed for a member to receive basic compensation. The claims will be evaluated and compared to Defendants' records to verify eligibility for compensation. The claims will be reviewed for determination of level of compensation and disputes as to validity and level of compensation will be reviewed as provided in the agreement.

No later than one hundred and eighty (180) calendar days after the date of entry of the Preliminary Approval Order or forty-five (45) calendar days after the date of Final Approval, whichever is later, CDCR will advance to the Settlement Administrator the Settlement Fund. Settlement funds will be distributed after final approval of the settlement per the terms of the Agreement.

A Final Approval Hearing shall be noticed for a date set by the Court at the Preliminary Approval Hearing, to allow for the provision of Class Notice, the expiration of the Objection/Exclusion Deadline, expiration of the Claim Deadline, and the claims review and evaluation process.

Settlement award checks not cashed and not returned as undeliverable within six (6) months of mailing will be voided and the funds from such checks will be reserved for donation to a 501(c)(3) non-profit corporation working with current or former female offenders mutually agreed to by Class Counsel and CDCR (Cy Pres Award). In the event a check is returned as undeliverable and the Settlement Administrator is unable to locate a new address, that check will be cancelled and the funds associated with the un-cashed checks will be tendered to the California State Controller as unclaimed property in the name of the Settlement Class Member.

Upon final approval by the Court, Defendants will be released from all further claims by class

members, except from the claims of those who timely opt out of the settlement.

Plaintiffs' counsel will submit their application for an award of attorneys' fees and reimbursement of costs prior to the Final Approval Hearing, which will be payable from the settlement fund per the terms of the Agreement.

## IV. ARGUMENT

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Preliminary approval is "first step in that process" and "authorizes the parties to give notice to putative class members of the settlement agreement and lays the groundwork for a future fairness hearing, at which the court will hear objections to (1) the treatment of this litigation as a class action and (2) the terms of the settlement." *Hill-Colbert v. City of Roseville*, 2025 U.S. Dist. LEXIS 71693, at *4–5 (E.D. Cal. Apr. 14, 2025).

### A. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

"To be certified, the putative class must satisfy the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *6.

#### 1. Rule 23(a)

The four "prerequisites" for certification are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

##### *a. Numerosity*

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). But "[i]mpracticability does not mean impossibility" and "only … difficulty or inconvenience in joining all members of the class" is sufficient. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (internal citation omitted). "As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *See*, *e.g.*, *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

Here, Plaintiffs have identified a class of approximately 142 inmates. Merin Decl. Ex. A @ Attachment 2 (Class List). "This more than satisfies the numerosity requirement." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *7.

***b. Commonality***

A class must have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement in class certification is satisfied when class members' claims depend upon a common contention of such a nature that is capable of class-wide resolution." *Powers v. McDonough*, 163 F.4th 1162, 1184–85 (9th Cir. 2025) (internal citation & alteration omitted). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) Even "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citation omitted). "Commonality does not require that every question in the case, or even a preponderance of questions, is capable of class-wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement." *Powers*, 163 F.4th at 1185 (internal citation omitted). For example, "the commonality requirement is satisfied 'where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

Here, common issues of law and fact include, for example, whether Defendants maintained a policy or custom of indiscriminate excessive force against inmates and, if so, whether class members' rights were violated because of such practices. *See*, *e.g.*, *Spain v. Procunier*, 408 F. Supp. 534, 547 (N.D. Cal. 1976) ("[A]bsent an actual or imminent threat of death or bodily harm or escape, an actual and imminent threat of serious damage to a substantial amount of valuable property, or an actual or incipient riot involving a large number of unconfined inmates, the use of tear gas against inmates constitutes cruel and unusual punishment and defendants and all their successors in office shall immediately and hereafter desist and refrain from the use of tear gas or other harmful chemical agents against plaintiffs except in the above enumerated circumstances[.]"); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002)

("prisoners may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4-hour period" after deploying pepper spray); *Furnace v. Sullivan*, 705 F.3d 1021, 1029 (9th Cir. 2013) ("pepper spray is not justified when an inmate only questions orders or seeks redress for an officer's actions").

Courts have recognized commonality related to claims of this nature. *See*, *e.g.*, *Stewart v. Luna*, 2025 U.S. Dist. LEXIS 153777, at *13–14 (C.D. Cal. Aug. 6, 2025) ("Plaintiffs' claims stem from one incident affecting all class members. All class members experienced the *same* tear gas, released by the *same* officers responding to the *same* incident. . . . Thus, common questions include (1) the need for the use of the force, (2) the amount of force used, (3) the relationship between the need for the use of force and the amount of force used; (4) efforts made by the officers to limit the amount of force; (5) the severity of the security problem at issue; (6) the threat reasonably perceived by the officers; (7) whether LASD had a policy that governed the officers' conduct; (8) whether that policy amounted to deliberate indifference to the detainees constitutional rights; and (9) whether the policy was the moving force behind the constitutional violation."); *Gonzalez v. GEO Grp., Inc.*, 2025 U.S. Dist. LEXIS 206686, at *70 (C.D. Cal. July 31, 2025) ("[T]he use of force incident occurred at a single facility and on the same evening. Plaintiffs address the issue of the various types and degrees of force used by narrowing the class definition to 3B-D detainees subjected to a common technique of area saturation through pepper balls and spray. Common questions predominate over individuals ones, including (1) whether the putative class members were protesting through noncompliance; (2) whether their conduct placed CERT officers or each other in imminent danger; (3) whether lesser means of force were fully exhausted; (4) whether warnings were issued before area saturation; and (5) whether the technique of area saturation was reasonable under the totality of the circumstances." (internal citations omitted)); *Fobbs v. Hunt*, 2021 U.S. Dist. LEXIS 87094, at *48–49 (E.D. Va. May 5, 2021) ("the crux of Plaintiff's allegations is that Defendants subjected all residents of Pod 5G to an unconstitutional use of force"); *Redmond v. Bigelow*, 2014 U.S. Dist. LEXIS 83694, at *11–12 (D. Utah June 17, 2014) ("[C]laims arise from the same event — the inmates' exposure to CS gas in the Olympus Facility. For the Damages Class, common issues of fact include the circumstances under which the CS gas was deployed, Plaintiffs' inability to exit their cells despite the gas exposure, delayed responses to emergency calls, and the actions taken toward the

inmates. The common questions of law for the Damages Class include the proper standard of review to apply to the claims, whether Defendants' conduct rose to the level of a deprivation of constitutional rights, and how to measure of damages."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007) ("command decisions to … authorize the use of force constitute the 'common core of salient facts' that support commonality."); *Logan v. City of Pullman*, 2005 U.S. Dist. LEXIS 37811, at *12 (E.D. Wash. Dec. 7, 2005) ("Given the allegation that the officers' use of chemical forces affected everyone in the building on the evening in question, there are questions of law and fact common to the proposed class."); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1385 (N.D. Ga. 1997) (common issues "whether [defendants' employees] used excessive force" and "whether [supervisory] [d]efendants … encouraged, facilitated, and ratified the use of excessive force …, thereby creating a custom or policy of excessive force…").

***c. Typicality***

A class must have "claims or defenses of the representative parties [which] are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members" but "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted). The analyses for commonality and typicality "tend to merge" because both factors "serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (internal citation omitted).

Here, as discussed, the class was subject to the same alleged violations of rights, pursuant to the same policies or customs. "For the same reasons [] that commonality exists, the requirement of typicality is met." *Coburn v. City of Sacramento*, 2020 U.S. Dist. LEXIS 238878, at *13 (E.D. Cal. Dec. 17, 2020). "Although the facts might differ for individual class members, the basis for their alleged injuries and the parties purportedly responsible for those injuries are the same. The proposed class therefore meets the

typicality requirement." *See*, *e.g.*, *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *9; *Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 632 ("differences in physical contact and injury [do not] defeat typicality … because they are permissible variations within a class").

***d. Adequacy of Representation***

A class must have "representative parties [who] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

*First*, there are no indications that the representative Plaintiff has any conflicts of interest with the class members, and she is sufficiently motivated to vigorously pursue the interests of the absent class members in this case. Merin Decl. ¶ 11. "The named plaintiffs' interests are generally aligned with those of the putative class members, who suffered injuries similar to those suffered by the named plaintiffs." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *9; *see also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1305 (D. Nev. 2014).

*Second*, Plaintiffs' counsels are aware of no conflicts of interest, are sufficiently motivated to vigorously pursue the interests of the absent class members, and are sufficiently qualified and experienced to represent the class members. Specifically, Plaintiffs are represented by qualified and competent counsel with extensive experience and expertise prosecuting class actions, including violations of constitutional rights of persons in custody. Merin Decl. ¶¶ 12–38; Declaration of Paul H. Masuhara. *See*, *e.g.*, *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *11–12 ("[P]laintiffs' counsel appear to be experienced civil rights litigators with class action experience which qualifies them to pursue the interests of the class. . . . The court finds no reason to doubt that plaintiffs' counsel is well qualified to conduct the proposed litigation and assess the value of the settlement.").

**2. Rule 23(b)(3)**

A damages class may be certified where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

***a. Predominance***

"The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News*, 737 F.3d 538, 545 (9th Cir. 2013) (internal citation omitted). "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal citations omitted). "The analysis is pragmatic and is more qualitative than quantitative. Common questions do not predominate if the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings." *Kristensen*, 12 F. Supp. 3d at 1306 (fns. omitted). But "common issues in the … [policy or custom] claim[] and *respondeat superior* liability are more than sufficient to meet the predominance requirement of Rule 23(b)(3)." *Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 634.

"Here, a common nucleus of facts and common legal questions dominate this litigation. Members of the proposed class were all present [at] the incident in question. Further, all members of the proposed class share a common interest in … whether the [prison's] policies or procedures caused the incident. Although the class members will be pursuing slightly different causes of action with respect their excessive force claims, depending on whether they were directly sprayed with O.C. or only suffered secondary effects of the O.C., common issues of fact dominate both inquiries. Finally, damages will likely present individualized issues, but in determining whether common issues predominate, the inquiry is directed to the issues of liability, not damages." *Logan*, 2005 U.S. Dist. LEXIS 37811, at *17–18; *see, e.g.*, *Stewart*, 2025 U.S. Dist. LEXIS 153777, at *21 ("Though officers may have been responding to a few noncooperative inmates, they deployed tear gas in Unit 711, exposing every inmate in the unit to the gas."); *Gonzalez*, 2025 U.S. Dist. LEXIS 206686, at *70 ("Common questions predominate over individuals ones, including (1) whether the putative class members were protesting through noncompliance; (2) whether their conduct placed CERT officers or each other in imminent danger; (3) whether lesser means of force were fully exhausted; (4) whether warnings were issued before area saturation; and (5) whether the technique of area saturation was reasonable under the totality of the

circumstances."); *Diggs v. Mici*, 2024 U.S. Dist. LEXIS 181072, at *13–14 (D. Mass. Sep. 30, 2024) ("The central issue in this case is whether the Administrative Supervisory Defendants directed, condoned, or were otherwise deliberately indifferent to the use of excessive force by correction officers during the class period. . . . Plaintiffs further allege that Administrative Supervisory Defendants were present for and did nothing to stop excessive uses of force, thereby condoning it. . . . Plaintiffs allege that these Defendants failed to properly investigate uses of force or to discipline improper uses of force, and that these Defendants condoned untruthfulness in writing reports. Defendants dispute these allegations; their denial raises common issues of fact shared by all class members, and thus weighs in favor of certification."); *Redmond*, 2014 U.S. Dist. LEXIS 83694, at *20 ("In this case, while all of the members of the Damages Class were exposed to CS gas, there is a variance between the length of exposure and harm. Although those variance are individual differences, the vast majority of facts and law at issue in the case are common to all members of the class."). Thus, "the common issues … are more than sufficient to meet the predominance requirement of Rule 23(b)(3)." *Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 634–35.

***b. Superiority***

"[A] class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). But because "[t]he parties settled this action prior to certification, [] factors (C) and (D) [are] inapplicable." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *14.

Individual Proceedings: Each class member has a limited interest in individually bringing their own action as the damages arising from each constitutional violation may not be significant, or alternatively, each class member is not likely to pursue their individual claims given the fact that they are often ignorant of their rights. Moreover, many class members are presently incarcerated, disabled, marginalized, fear retaliation, and/or are poor and, thus, unable to bring individual actions. *See, e.g.*,

*Zinser*, 253 F.3d at 1190; *Gonzalez*, 2025 U.S. Dist. LEXIS 206686, at *77 ("[T]he fact that putative class members may otherwise be unable to bring their claims due to their tenuous situations [] militates in favor of certification. Fear of negative immigration consequences may also deter individual claims, a fact that also weighs in favor of certification." (internal citation omitted)); *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *14 ("most if not all class members appear to be indigent and without the means to bring lawsuits on their own").

Other Litigation: One case involving 13 potential class members was previously filed. *Wind v. State of California*, Case No. 1:25-cv-00266-JLT-HBK (E.D. Cal.). But that case was settled and, thus, those potential class members will not participate in the class action settlement.

**3. Rule 23(c)(2)**

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Although that notice must be reasonably certain to inform the absent members of the plaintiff class, actual notice is not required." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *14 (internal citation omitted).

Notice: A class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation omitted). Plaintiffs' proposed class notice, *see* Merin Decl. Ex. A @ Attachment 3, "explains the proceedings, defines the scope of the class, and explains what the settlement provides and how much each class member can expect to receive in compensation" as well as "explains the opt-out procedure, the procedure for objecting to the settlement, and the date and location of the final approval hearing. [¶] The content of the proposed notice therefore satisfies Rule 23(c)(2)(B)." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *14–15.

Delivery: Plaintiffs propose delivering the class notice by mail to class members' last-known addresses maintained by the CDCR. Merin Decl. Ex. A at 13–14. *See*, *e.g.*, *Lewis v. Starbucks Corp.*, 2008 U.S. Dist. LEXIS 83192, at *14 (E.D. Cal. Sep. 10, 2008) ("notify[ing] class members at their last

known addresses via first-class mail" where "[t]he addresses will be sourced from [defendant's] records").

**B. PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE**

"After determining that the proposed class satisfies the requirements of Rule 23(a) and (b) . . . . at the preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *16–17 (internal citation omitted); *see*, *e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d. 1078, 1079–80 (N.D. Cal. 2007) ("range of reasonableness"). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, this Court need not review the settlement in detail at this juncture," *Pataky v. Brigantine, Inc.*, 2018 U.S. Dist. LEXIS 101663, at *7 (S.D. Cal. June 18, 2018), and need only "resolve any glaring deficiencies in the settlement agreement before authorizing notice to class members," *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *17 (internal citation omitted). "Preliminary approval of a settlement and notice to the proposed class is appropriate: if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval…" *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (internal citation & alteration omitted).

**1. Negotiation of the Settlement Agreement**

"[Courts] put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, the parties' settlement agreement is fair because it results from arms-length negotiations. Specifically, the parties, through independent counsel of their choice, conducted an extensive mediation with retired U.S. Magistrate Judge Kendall J. Newman that was ultimately successful in producing the settlement agreement. Merin Decl. ¶¶ 6–10. *See Vasquez*, 670 F. Supp. 2d at 1125; *Pataky*, 2018 U.S. Dist. LEXIS 101663, at *8; *Lackey v. SDT Waste & Debris Servs., LLC*, 2014 U.S. Dist. LEXIS 136181, at *4–5 (E.D. La. Sep. 26, 2014) (presuming that no fraud or collusion occurred between counsel where the settlement was reached after multiple settlement conferences in front of a magistrate judge); *see also Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *18 ("Given the parties' representation that the settlement

reached was the product of arms-length bargaining following thorough informal discovery, the court at this stage does not question that the proposed settlement is the result of informed and non-collusive negotiations between the parties.").

**2. Amount Recovered and Distribution to the Class**

To evaluate the "range of possible approval" criterion, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. "This inquiry may involve consideration of the uncertainty class members would face if the case were litigated to trial." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *18–19.

Here, the class action settlement agreement confers a substantial benefit on class members, while proceeding with this litigation presents significant risks. While Plaintiffs have obtained substantial discovery and investigated to corroborate the alleged class claims, Defendants maintain that liability is contested. Merin Decl. Ex. A at 18–19. Even if Plaintiffs were able to both obtain class certification <u>and</u> prevail on behalf of the certified class, it would require the expenditure of considerable additional time and resources, potentially outweighing any additional recovery obtained through successful litigation. "Plaintiffs face[] numerous risks in the litigation, including proving all elements of the claims, obtaining and maintaining class certification, establishing liability, and the costliness of litigation on these issues." *Hill-Colbert*, 2025 U.S. Dist. LEXIS 71693, at *19. "At the least, continued litigation will delay payment to the [c]lass." *Vasquez*, 670 F. Supp. 2d at 1126. Thus, the class action settlement agreement is fair, reasonable, adequate, and, in light of all known facts and circumstances including the risks of establishing liability and the significant delay in receiving compensation, is in the best interest of the class.

## V. <u>CONCLUSION</u>

Therefore, for the reasons stated, the Court should:

1. Grant preliminary approval of the parties' class action settlement agreement in the form substantially similar to the proposed order attached;

2. Certify the proposed settlement class, for settlement purposes only, pursuant to Rule 23(a) and (b)(3);

3. Appoint Mark E. Merin and Paul H. Masuhara as Settlement Class Counsel, for settlement

purposes only;

4. Appoint Alexis Hooper as the Class Representative (also known as "Representative Plaintiff"), for settlement purposes only;

5. Approve and authorize the issuance and distribution of the Class Notice and Claim, consistent with the terms of the class action settlement agreement;

6. Approve the proposed compensation to potential class members consistent with the terms of the class action settlement agreement;

7. Schedule a date for the Final Fairness Hearing, subject to the Court's availability and convenience, during which final approval of the class action settlement agreement may be considered by the Court and any objections to the terms of the class action settlement agreement may be heard; and

8. Stay this action, pending the Court's determination at the Final Fairness Hearing, except for any activities contemplated by the class action settlement agreement and this Court's preliminary approval, including any submissions to the Court.

Dated: October 20, 2026

Respectfully Submitted,



By: ______________________________

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiff
ALEXIS HOOPER and the class of similarly situated persons she seeks to represent