Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336
E-Mail: mark@markmerin.com
paul@markmerin.com

Attorneys for Plaintiff
ALEXIS HOOPER and the class of similarly situated persons she seeks to represent

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ALEXIS HOOPER and the class of similarly situated persons she seeks to represent,<br><br>Plaintiffs,<br><br>vs.<br><br>ANISSA DE LA CRUZ, ISIDRO ARROYO, C. MENDOZA, MICHAEL FELIX, V. RAMOLETE, BECERRA, and DOE 1 to 60,<br><br>Defendants. | Case No. 1:25-cv-00610-JLT-HBK<br><br>**DECLARATION OF MARK E. MERIN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 4, 2026<br>Time: 1:00 p.m.<br>Location: Robert E. Coyle U.S. Courthouse, 2500 Tulare Street, Fresno, CA 93721<br>Courtroom: 2 (8th Floor)<br>Magistrate Judge: Hon. Helena M. Barch-Kuchta |

I, Mark E. Merin, do declare and say:

1. I am an attorney licensed in the State of California and admitted to practice before the United States District Court for the Eastern District of California. My office represents Alexis Hooper and the class of similarly situated persons she seeks to represent (collectively, "Plaintiffs").

**FACTS**

2. On August 2, 2024, at the Central California Women's Facility (CCWF) in Chowchilla, California, California Department of Corrections & Rehabilitation (CDCR) correctional officers removed approximately 142 inmates in Building 513 from their cells and directed the inmates to the cafeteria.

Once at the cafeteria, a supervisory officer informed the inmates that their personal property was being thrown into the trash, stating, "They are throwing your shit out," causing the inmates to become upset and protest. Officers formed a skirmish line around the inmates and began to deploy less-lethal munitions against the inmates, including pepper-spray and tear-gas. Defendants have produced a surveillance camera recording from the cafeteria which depicts the assault as "D DINING 8 1192-4-2024-08-02_12h00min00s000ms.mp4."

3. Officers removed the inmates to an area outside of the cafeteria. Officers denied the inmates access to medical treatment, even though they had been doused with chemicals and were suffering from the application of chemical irritants. The inmates were forced to remain outside for several hours following the incident. Defendants have produced a surveillance camera recording from the yard which depicts the incidents as "CCWF_701D_0070-3-2024-08-02_12h00min00s000ms.asf."

4. On August 3, 2024, the next day, CCWF warden Anissa De La Cruz sent an email to all staff commending the prison staff for their actions during the assault. Defendants have produced the email as "AGO 012323.pdf."

## EXHIBITS

5. A true and correct copy of the parties' class action settlement agreement and release, including claim form (attachment 1), class list (attachment 2), class notice (attachment 3), and settlement award calculation method (attachment 4), is attached as **Exhibit A**.

## SETTLEMENT NEGOTIATIONS

6. The parties to this action worked jointly to draft a detailed Settlement Agreement, including a Class Notice and Claim Form. (**Exhibit A**.) The parties' Settlement Agreement is the result of the parties' arms' length negotiations, through independent counsel of their choice, crafted from extensive settlement discussions and after the exchange of significant discovery and information.

7. Prior to settlement discussions, the parties conducted extensive investigation and discovery. For example, Defendants made informal productions on March 18, 2026, April 17, 2026, and June 24, 2026, including production of 13,965 pages of documents, 134 video recordings (99.8 GB), and 122 audio recordings (6.4 GB). The production included recordings of the relevant incident, post-incident investigation reports, prisoner records, and policies and procedures. Additionally, Plaintiffs' counsel

made contact with and solicited victim questionnaires from at least 102 potential class members and obtained responsive questionnaires from at least 68 potential class members.

8. Plaintiffs' counsel spoke with victims and witnesses and reviewed and gathered documents which allowed them to assess the strengths and weaknesses of the case.

9. On July 27, 2026, the parties' counsel attended an all-day mediation before retired United States Magistrate Judge Kendall J. Newman. Therein, the parties reached agreement on the principal terms of a class action settlement, subject to Court approval, which, if granted, would resolve all claims and defenses alleged by all parties to this action.

10. In my opinion, the Settlement Agreement potentially benefits a substantial number of persons who, were it not for the settlement, would likely have received no compensation whatsoever.

## QUALIFICATIONS & EXPERIENCE

11. Based on my discussions with the proposed representative plaintiff, Alexis Hooper, I have learned of no conflicts of interest between her and the settlement class she seeks to represent through this action, nor do I believe that any conflicts of interest are likely to develop in the future. If appointed as class representative, Ms. Hooper appears sufficiently motivated to vigorously pursue the interests of absent class members through this action. This is demonstrated by her cooperation with counsel and participation in this litigation including attendance at the mediation.

12. Based on my knowledge of the issues in this case, I have learned of no conflicts of interest between counsel and the settlement class, nor do I believe that any conflicts of interest are likely to develop in the future. If appointed as class counsel, my office is prepared to vigorously pursue the interests of absent settlement class members through this action.

13. I have extensive experience in civil rights litigation and class actions, in particular. My firm, the Law Office of Mark E. Merin, substantially concentrates its practice in the prosecution of civil rights litigation matters and class actions.

14. I have settled the following strip search class actions: *Bull v. County of Sacramento*, Case No. 01AS01545 (Sacramento Cnty. Super. Ct.); *Haney v. Miami-Dade County*, Case No. 1:04-cv-20516-AJ (S.D. Fla.); *Allison v. Lincoln County*, Case No. 1:05-cv-00881-WJ-WDS (D.N.M.); *Gallagher v. San Mateo County*, Case No. 4:04-cv-00448-SBA (N.D. Cal.); *Schaffer v. County of Alameda*, Case No.

3:06-cv-00310-MMC (N.D. Cal.); *Butler v. Santa Cruz County*, Case No. 5:07-cv-00941-JF (N.D. Cal.); *Suon v. County of Alameda*, Case No. 3:07-cv-01770-MMC (N.D. Cal.); *Robinson/Kozlowski v. Sacramento County*, Nos. 2:04-cv-01617-FCD-EFB (E.D. Cal.), 2:04-cv-02381-FCD-EFB (E.D. Cal.); *Garcia v. Santa Cruz County*, Case No. 4:08-cv-00139-RCC (D. Ariz.); *Moyle vs. Contra Costa County*, Case No. 3:05-cv-02324-JCS (N.D. Cal.); and *Todd v. Solano County*, Case No. 2:07-cv-00726-FCD (E.D. Cal.), which involved class issues and thousands of arrestees. Nearly all the settlement classes in the above-referenced actions utilized subclass definitions and procedures to determine the rate of compensation for each settlement class member, depending upon the frequency and degree of the violation experienced. Additionally, each of these class action settlements was administered by a class action administration company, which counsel frequently worked with to resolve issues related to individual settlement class members' claims.

15. Together with local counsel Paul J. James of James & Carter, PLC, I filed and obtained a stipulated class settlement on behalf of a class of persons who were subject to long-distance, multi-day extradition transports in vehicles with inhumane conditions, including lack of access to bathrooms, sanitation, clean clothes, food, and the ability to rest or sleep. *Stearns v. Inmate Servs. Corp.*, Case No. 3:16-cv-00339-BRW-JJV (E.D. Ark.), Case No. 3:19-cv-00100-KGB (E.D. Ark.). The class action settlement was preliminarily and finally approved, providing several persons with significant compensation. Earlier in the case, I argued and prevailed before the United States Court of Appeals for the Eighth Circuit, resulting in a published decision. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020).

16. I filed and obtained a stipulated class settlement on behalf of a class of persons who were "kettled" and arrested, without cause, during a demonstration against police violence. *Coburn v. City of Sacramento*, Case No. 2:19-cv-00888-TLN-AC (E.D. Cal.). The terms of the class settlement were preliminary and finally approval by the court, and several class members received settlement payments.

17. Together with co-counsel Paul W. Comiskey, I filed and obtained a stipulated class settlement on behalf of a class of homeless persons whose personal property was unlawfully seized and destroyed by city agents and who were unlawfully cited and excluded from parks. *Hill-Colbert v. City of Roseville*, Case No. 2:22-cv-01651-WBS-SCR (E.D. Cal.). The class action settlement was preliminarily

and finally approved, providing several homeless persons who lost property and were excluded from parks with significant compensation and providing a revision to the city's park exclusion ordinance.

18. Together with co-counsel Anthony D. Prince of the California Homeless Union, I filed and obtained a stipulated class settlement on behalf of a class of homeless persons whose personal property was unlawfully seized and destroyed by city and county agents. *Butcher v. City of Marysville*, Case No. 2:18-cv-02765-JAM-CKD (E.D. Cal.). The class action settlement was preliminarily and finally approved, providing several homeless persons who lost property with significant compensation.

19. Together with local counsel Allen Lichtenstein, I filed, obtained class certification, and was appointed class counsel on behalf of a class of up to 1,500 psychiatric patients who were victims of "patient-dumping" after they were involuntarily discharged and bussed out-of-state by the State of Nevada-operated Rawson-Neal Psychiatric Hospital. *Brown v. Southern Nevada Adult Mental Health Services*, Case No. A-14-706095-C (Clark Cnty. Dist. Ct.).

20. I filed and obtained a stipulated class settlement on behalf of a class of up to hundreds of jail inmates who were subject to systemic abuse, including unreasonable uses of force, in a county jail. *Bangert v. County of Placer*, Case No. 2:17-cv-01667-TLN-KJN (E.D. Cal.). The terms of the class settlement were preliminary and finally approval by the court, and class members received settlement payments.

21. Together with Andrew C. Schwartz of firm of Casper, Meadows, Schwartz & Cook, I filed, was designated as co-class counsel for the class, and obtained class certification and summary judgment in the strip search/safety-cell case. *Bull v. City & County of San Francisco*, Case No. 3:03-cv-01840-CRB (N.D. Cal.); *see*, *e.g.*, 2004 U.S. Dist. LEXIS 31664 (N.D. Cal. June 10, 2004) (granting plaintiffs' motion for class certification, denying defendants' motion for summary judgment). A decision by the United States Supreme Court, *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012), changed the law as it was previously applied in the Ninth Circuit and the *Bull* case was subsequently settled on an individual basis.

22. I was approved as counsel for a settlement class which benefitted hundreds of individuals who had their vehicles unlawfully towed from locations within the City of Sacramento, California, without the posting of proper notice. *Hiestand v. City of Sacramento*, Case No. 34-2009-00055245

(Sacramento Cnty. Super.Ct.).

23. Together with attorneys from the firm of Siegel & Yee, I filed a class action lawsuit against the County of Sacramento, California, for its practice of "dipping" and "slamming" juvenile youth in the custody of the Sacramento County Juvenile Hall. The case was settled on behalf of named individual plaintiffs prior to a class certification decision. *Page v. County of Sacramento*, Case No. 2:09-cv-02825-MCE-KJM (E.D. Cal.). Additional individuals complaining of experiences similar to those identified in the *Page* action caused this firm, in conjunction with Siegel & Yee, to file four additional lawsuits against the County of Sacramento for its use of excessive force against youth residents. Those cases were coordinated and settled. *Shadd v. County of Sacramento*, Case No. 2:12-cv-002834-MCE-KJN (E.D. Cal.).

24. I was designated co-class counsel with Andrew C. Schwartz and Karen L. Snell, both with firms in the Bay Area, representing a class of approximately 20,000 prisoners and former prisoners in an action against TransCor America, LLC for subjecting class member prisoners to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution during protracted periods of transportation from one penal institution to another. *Schilling v. TransCor America, LLC*, Case No. 3:08-cv-00941-SI (N.D. Cal.); *see*, *e.g.*, 2010 U.S. Dist. LEXIS 20786 (N.D. Cal. Feb. 16, 2010) (granting plaintiffs' motion for class certification).

25. Together with attorneys from the Northern California America Civil Liberties Union, I represented and obtained a settlement on behalf of University of California at Davis students who were pepper-sprayed and arrested by campus police officers in November 2011 during an "Occupy" protest. *Baker v. Katehi*, Case No. 2:12-cv-00450-JAM-EFB (E.D. Cal.).

26. I represented a class consisting of hundreds of homeless persons against the City of Sacramento for the unlawful seizure and destruction of personal property. *Lehr v. City of Sacramento*, Case No. 2:07-cv-01565-MCE-GGH (E.D. Cal.); *see*, *e.g.*, 259 F.R.D. 479 (E.D. Cal. 2009) (granting plaintiffs' motion for class certification). In that case, my firm obtained a favorable jury verdict on behalf of the certified class and, as a result, negotiated a class action settlement which monetarily benefitted thousands of homeless individuals who had their property seized and destroyed while living within the City of Sacramento. Following the settlement, my firm was awarded attorneys' fees and, in doing so, the

court noted that I was "one of the most experienced and successful civil rights attorneys in the Sacramento area…" *Lehr v. City of Sacramento*, 2013 U.S. Dist. LEXIS 42014, at *21 (E.D. Cal. Mar. 22, 2013).

27. I filed and obtained a stipulated settlement benefitting hundreds, if not thousands, of arrestees who were arrested and not subsequently charged with any crime but, nonetheless, denied a "detention certificate" required under California law that stated that the arrestee was subject to a "detention only." *Yao v. City of Folsom*, Case No. 34-2016-80002446 (Sacramento Cnty. Super. Ct.); *Cathey v. City of Vallejo*, Case No. FCS047901 (Solano Cnty. Super. Ct.). Those cases were resolved by a certification that the arresting public entity issue the required "detention certificate" to uncharged arrestees.

28. My firm has been lead counsel in a host of civil rights cases involving multiple plaintiffs. *See*, *e.g.*, *Feminist Women's Health Center v. Superior Court (Jenkins)*, 52 Cal. App. 4th 1234 (Cal. Ct. App. 1997); *Feminist Women's Health Center v. Blythe*, 32 Cal. App. 4th 1641 (Cal. Ct. App. 1995); *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989); *California State Emp. Ass'n v. Cory*, 123 Cal. App. 3d 888 (Cal. Ct. App. 1981); and *Spain v. Procunier*, 408 F. Supp. 534 (N.D. Cal. 1976), *aff'd*, 600 F.2d 189 (9th Cir. 1979).

29. I litigated a writ of mandate action known as *Engineering Technicians Technical Inspectors v. Harada*, Case No. 97CS01493 (Sacramento Cnty. Super. Ct.), which was filed on behalf of a union and approximately 50 long-term temporary employees in the Public Works Department. The writ led to the issuance of an order directing the County of Sacramento to cease employing long-term temporary employees and barring the use of blanket extensions of provisional employment status. As a result of this litigation, the County added one hundred limited term or permanent positions to the County's salary ordinance effective July 1, 1998.

30. I represented 99 individual employees who were denied the benefits of permanent County employment. *Hamilton v. County of Sacramento*, Case No. 98AS02991 (Sacramento Cnty. Super. Ct.). The case was settled before it was certified as a class action but led to substantial benefits being paid to those numerous plaintiffs.

31. The Law Office of Mark E. Merin represents public and private employees and their

unions in all facets of employment and has done so since it was founded. I, personally, have handled and been responsible for a large range of labor and employment litigation including actions brought on behalf of a statewide unit of 10,000 employees (psychiatric technicians employed in state hospitals) to enforce staffing minimums and to police compliance with resulting orders. I have represented unions in collective bargaining in several industries, including the bottling industry, the nursing industry, the transportation industry, and the public employment sector. I have also handled discipline and discharge cases, discrimination cases and successfully prosecuted several writ of mandamus actions.

32. My firm was lead counsel in prosecuting a federal class action in the healthcare field (on behalf of all women receiving services at Feminist Women's Health Centers), and a decision of which was reported as *Chico Feminist Women's Health Center v. Butte Glenn Medical Society*, 557 F. Supp. 1190 (E.D. Cal. 1983), and on behalf of a class of thousands of California state prisoners employed in prison industries to obtain minimum wage for their hours of work, a decision of which was reported as *Burleson v. California*, 83 F.3d 311 (9th Cir. 1996).

33. Over a period of 40 years, I have represented several unions, including the Association of Professional Engineers, County of Sacramento ("APECS") union and the Engineering Technicians Technical Inspectors ("ETTI") union, where wage and hour issues were regularly the subject both of negotiations and of grievances and arbitrations and litigation.

34. My firm recently prevailed in a wage and hour action which resulted in a published California Court of Appeals decision. *Seymore v. Metson Marine, Inc.*, Case No. CIV-MSC-08-02279 (Contra Costa Cnty. Super. Ct.); *see* 194 Cal. App. 4th 361 (Cal. Ct. App. 2011), *rev. denied*, 2011 Cal. LEXIS 7828 (Cal. 2011).

35. I was co-counsel for plaintiffs in a wage and hour class action involving a putative class of thousands of former and current pharmacy employees for missed rest and lunch breaks. *Kyle v. Rite Aid Corp.*, Case No. 34-2008-00032716 (Sacramento Cnty. Super. Ct.). The case was coordinated with a similar action, *Rite Aid Wage and Hour Cases*, Case No. JCCP 4583 (Los Angeles Cnty. Super. Ct.). That case was resolved through a stipulated class settlement which was finally approved by the court and payments distributed in 2016.

36. I was appointed class counsel for plaintiffs and a stipulated class in a wage and hour class

action involving approximately 50 former and current delivery truck workers in Oakland. *Tankovic v. Gurfinkel*, Case No. RG13688851 (Alameda Cnty. Super. Ct.). That case was resolved through a stipulated class settlement with periodic settlement payments to class members.

37. I was appointed class counsel for plaintiffs and a stipulated class based on California Family Rights Act ("CFRA") violations involving approximately 2,055 current and former employees of Pacific Bell Telephone Company who sustained a reduction in seniority after state law-authorized leaves of absence. *Gordon v. Pacific Bell Telephone Company*, Case No. 34-2013-00153003 (Sacramento Cnty. Super. Ct.). That case was resolved through a stipulated class settlement with settlement payments to class members.

38. For all the reasons stated above, I believe that my office is sufficiently experienced in similar litigation such that I am qualified to be designated as class counsel.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct and that this declaration was executed on October 20, 2026, at Sacramento, California.

Mark E. Merin

# EXHIBIT A

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

## I. PARTIES

This Class Action Settlement Agreement and Release ("Settlement Agreement") is made by and among Plaintiff Alexis Hooper ("Plaintiff" or "Class Representative"), on behalf of herself and all others similarly situated, and the California Department of Corrections and Rehabilitation (CDCR) on behalf of Defendants A. De La Cruz, E. Becerra, I. Arroyo, , C. Mendoza, and V. Ramolete ("Defendants"), subject to Court approval.

## II. DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meanings set forth below. Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

1. "Action" means the case entitled *Alexis Hooper*, *and the class of similarly situated persons she seeks to represent v. Anissa De Le Cruz*, *et al.*, Case No. 1:25-cv-00610 JLT-HBK (E.D. Cal.).

2. "Administrator Expenses Payment" means the amount the Settlement Administrator will be paid from the Settlement Fund to pay its reasonable fees and expenses in accordance with the Administrator's "not to exceed" bid submitted to the Court in connection with Plaintiffs' Motion for Preliminary Approval of the Settlement, as approved by the Court.

3. "CDCR" means the California Department of Corrections and Rehabilitation.

4. "Claim Deadline" means sixty (60) calendar days after the Class Notice is first mailed to Settlement Class Members and is also the date by which Settlement Class Members who seek enhanced compensation must submit a completed Claim Form. Class Members to whom the Class Notice is resent after having been returned undeliverable to the Settlement Administrator shall have an additional fourteen (14) calendar days beyond the Claim Deadline. Class Members incarcerated within CDCR custody at the time of the Claim Deadline will have an additional fourteen (14) calendar days to submit a claim.

5. "Claim Form" means the form substantially similar to **Attachment 1**, including a medical records release, that will be sent to the Settlement Class Members together with the Class Notice, and which Settlement Class Members who wish to seek enhanced compensation beyond the basic compensation entitled to all Settlement Class Members must submit by the Claim Deadline.

6. "Class" or "Settlement Class" or "Settlement Class Members" means the 142 persons identified by name and CDCR number in **Attachment 2** who, on August 2, 2024, were assigned to Housing Unit 513 on Facility D at the Central California Women's Facility and were present in the Facility D Dining Hall (Building 701) and/or Facility D Yard during the Event, as defined herein. The persons identified in Attachment 2 constitute the complete and exclusive Settlement Class, and any person not named in Attachment 2 is not entitled to participate in the Settlement. The thirteen named plaintiffs in *Wind, et al. v. State of California, et al*. Case No.

1:25-cv-00266 JLT HBK (E.D. Cal.) are excluded from the Settlement Class. The total number of Settlement Class Members entitled to a Settlement Award will be determined following the Objection/Exclusion Deadline.

7. "Class Counsel" means Mark E. Merin and Paul H. Masuhara of the Law Office of Mark E. Merin, on Preliminary Approval by the Court.

8. "Class Data" means information provided to Class Counsel or the Settlement Administrator regarding the last known contact information for the Settlement Class Members, as well as all copies and summaries of any other data provided by CDCR to Class Counsel or the Settlement Administrator related to Settlement Class Members to facilitate contact with the Settlement Class Members to fulfill the terms of this Settlement Agreement.

9. "Class Notice" means the Court-approved form of notice to the Class Members substantially similar to **Attachment 3**, which will notify the Class of the Settlement, including Preliminary Approval of the Settlement, the procedures for objecting to the Settlement, the Settlement Class Members' ability to claim enhanced compensation, the process for requesting exclusion from the Settlement, and the scheduling of the Final Approval Hearing.

10. "Complaint" means the Class Action Complaint filed on May 22, 2025, in this Action.

11. "Counsel for CDCR" means Alicia A. Bower, Jacqueline Kallberg, and Arthur B. Mark III of the Office of the California Attorney General, and any other Deputy Attorney General who may be assigned.

12. "Counsel for Plaintiff" or "Plaintiff's Counsel" means Mark E. Merin and Paul H. Masuhara of the Law Office of Mark E. Merin.

13. "Counsel for Defendants" or "Defense Counsel" means Alicia A. Bower, Jacqueline Kallberg, and Arthur B. Mark III of the Office of the California Attorney General for Defendants A. De La Cruz, I. Arroyo, V. Ramolete, and E. Becerra and J. Randall Andrada of Andrada & Associates for Defendant C. Mendoza.

14. "Court" means the United States District Court for the Eastern District of California, Fresno Division.

15. "Defendants" means A. De La Cruz, I. Arroyo, C. Mendoza, V. Ramolete, E. Becerra, and "Does 1 to 60."

16. "Effective Date" means the first calendar day after the Final Approval Order and Judgment becomes final and non-appealable. If no appeal or other timely request for appellate review is filed, the Effective Date shall be the first calendar day following expiration of the applicable period for seeking appellate review. If an appeal or other timely request for appellate review is filed, the Effective Date shall be the first calendar day following final disposition of such appeal or review in a manner that leaves the Settlement and Final Approval Order and Judgment in effect. The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, Class Counsel's Fee and Expense Award in the amounts requested

by Class Counsel. Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Class Counsel's Fee and Expense Award.

17. "Event" or "Incident" means the August 2, 2024 placement of the Settlement Class Members assigned to Housing Unit 513 on Facility D at the Central California Women's Facility in the Facility D Dining Hall (Building 701) during a search of Housing Unit 513, their subsequent movement to the Facility D Yard area, and any alleged uses of force against the Settlement Class Members, including but not limited to, exposure to chemical agents and physical force, whether in the Dining Hall or on the Yard area on August 2, 2024.

18. "Fee and Expense Award" means the amount of attorneys' fees and expenses awarded by the Court to Class Counsel from the Settlement Fund for services rendered and expenses incurred in this Action, not to exceed $2,500,000. CDCR's agreement not to oppose a Fee and Expense Award for up to $2,500,000 shall not constitute an admission that any particular amount is reasonable or warranted.

19. "Final Approval Hearing" means a hearing held by the Court following the Preliminary Approval Hearing to consider Final Approval of the Settlement, the Fee and Expense Award, the Incentive Fee, Administrator Expenses Payment and the merits of any objections to this Settlement Agreement and the Settlement.

20. "Final Approval" means that the Court has issued its final order approving the Settlement, including the Fee and Expense Award, the Incentive Fee, Administrator Expenses Payment, and the Court has issued an Order of Dismissal and Judgment.

21. "Incentive Fee" means the amount awarded by the Court from the Settlement Fund to Plaintiff for serving as the class representative and obtaining the benefits of the Settlement for the Settlement Class in this Action. CDCR's agreement not to oppose an Incentive Fee award of up to $25,000 shall not constitute an admission that any particular amount is reasonable or warranted.

22. "Objection" means a written objection filed with the Court and served on counsel for the respective Parties by a Settlement Class Member by the Objection/Exclusion Deadline, objecting to the Settlement as set forth in Paragraph III.21 below.

23. "Objection/Exclusion Deadline" means sixty (60) calendar days after the Class Notice is mailed to Settlement Class Members and shall be the date by which Settlement Class Members who choose not to participate in the Settlement must exclude themselves from the Settlement by filing a timely Request to be Excluded in accordance with the requirements set forth in this Settlement Agreement and the Class Notice, or object to the Settlement by filing and serving a timely Objection in accordance with the requirements set forth in this Settlement Agreement and the Class Notice. Class Members to whom the Class Notice is resent after having been returned undeliverable to the Settlement Administrator shall have an additional fourteen (14) calendar days. Class Members incarcerated within CDCR custody at the time of the Claim Deadline will have an additional fourteen (14) calendar days to submit a claim.

24. "Order of Dismissal and Judgment" means the order and judgment issued by the Court approving this Settlement Agreement as binding on the Parties and dismissing the Action

with prejudice, which shall constitute a judgment respecting the Parties within the meaning and for purposes of the Federal Rules of Civil Procedure, including but not limited to Federal Rule of Civil Procedure 54.

25. “Parties” means Plaintiff, Defendants, and CDCR.

26. “Plaintiff” means Alexis Hooper, the named plaintiff in this Action and the “Class Representative” for purposes of the Settlement.

27. “Preliminary Approval” means that the Court has entered an order preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing notice of the Settlement to the Settlement Class Members.

28. “Released Claims” means the claims released by this Settlement Agreement, as set forth in Section IV.

29. “Released Parties” or “Released Persons” means CDCR, Defendants, and their respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, related, or affiliated entities and agencies, whether named or unnamed and whether served or unserved, and any and all of their past and present employees, executives, officers, directors, agents, representatives, and attorneys. The term “Released Parties” or “Released Persons” expressly includes, but is not limited to, the State of California and its departments, divisions, and agencies, including CDCR and the named Defendants A. De La Cruz, E. Becerra, I. Arroyo, C. Mendoza, and V. Ramolete.

30. “Releasing Parties” means the Class Representative, Alexis Hooper, all Settlement Class Members who participate in the Settlement, and each of their respective principals, agents, attorneys, successors, assigns, heirs, descendants, executors, representatives, partners, and associates. Each of the Releasing Parties may be referred to individually as a “Releasing Party.”

31. “Request to Be Excluded” means a written request by a Settlement Class Member timely submitted to the Court with copies to the Settlement Administrator, Class Counsel, and Counsel for CDCR stating that the Settlement Class Member wishes to be excluded (“opt-out”) from the Settlement as set forth in Paragraph III.19 below, in which case such an individual will not be bound by the Settlement, nor be entitled to receive any Settlement Award or have standing to object to the Settlement.

32. “Settlement” and “Settlement Agreement” or “Agreement” mean the Parties’ agreement to resolve this Action, the terms of which have been memorialized in this Settlement Agreement and shall include the Attachments and any addenda to this Settlement Agreement.

33. “Settlement Administrator” or “Administrator” means Simpluris, the neutral entity agreed by the Parties that Plaintiffs have retained to administer the Settlement.

34. “Settlement Award” means the amount that each Settlement Class Member is entitled to receive from the Settlement Fund after deduction of the Fee and Expense Award, the Incentive Fee, and the Administrator Expenses Payment from the Settlement Fund under the

terms of this Settlement Agreement. To the extent any Settlement Class Member owes restitution, liens, administrative fees, or other fees that must be deducted prior to their Settlement Award payment, their individual Settlement Award will be first applied to payment of any restitution, liens, administrative fees, or other fees as provided in Paragraph III.12.

35. "Settlement Award Calculation Method" means the method for determining the value of the Settlement Awards, which the Settlement Administrator will employ as set forth in **Attachment 4.**

36. "Settlement Fund" means a maximum amount of $10,000,000, which is the total and absolute maximum amount that CDCR agrees to pay in connection with this Settlement Agreement. The Settlement Fund shall be used to pay all Settlement Awards, the Fee and Expense Award, the Incentive Fee, Administrator Expenses Payment, taxes properly payable from the Settlement Fund, and all other costs, fees, expenses, claims, payments, and reimbursements associated with implementing, administering, and resolving any disputes arising from the Settlement. Under no circumstances shall CDCR, Defendants, the State, or any Released Party have any obligation to pay or reimburse any total amount in excess of $10,000,000.

## II. RECITALS

1. Plaintiff filed the Complaint in this Action alleging Defendants violated her and the Settlement Class Members' Eighth Amendment rights arising out of the Event. This Settlement Agreement covers all claims and allegations in the Complaint and any amendments thereto, and any claims that could have been alleged, against CDCR, Defendants, or any Released Party, whether named or unnamed and whether served or unserved, and any past or current employees of CDCR.

2. The Parties have conducted significant investigation and analysis of the facts and law relevant to this Action, both before and after this Action was filed. Plaintiff's Counsel has received substantial information from Settlement Class Members, CDCR, and Defendants, including the opportunity to examine investigative reports and video footage regarding the Event under a protective order issued in this Action. Counsel for the Parties have further investigated the applicable law as applied to the facts discovered regarding Plaintiff's claims, the applicable defenses, and the damages claimed by Plaintiff on behalf of herself and the Settlement Class Members.

3. Plaintiff has considered the expense and length of continued proceedings necessary to continue the Action against Defendants through trial and any possible appeals, and to demonstrate that certification of the proposed class would be appropriate and that the putative class is ascertainable. It is Plaintiff's position that she would prevail in the Action and successfully certify the putative class identified in the Complaint. Nevertheless, Plaintiff has also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation, including those involved in seeking class certification. Plaintiff is also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, Defendants' defenses, and the difficulties in establishing the amount and fact of damages for specific incarcerated persons involved in the Event. In addition,

Plaintiff has considered the settlement negotiations conducted by the Parties, including those conducted before the Honorable Kendall J. Newman, retired, United States District Court for the Eastern District of California. Based on the foregoing and on the advice of Plaintiff's Counsel, Plaintiff has determined that the Settlement set forth in this Settlement Agreement is fair, adequate, and reasonable, and is in the best interests of the Settlement Class.

4. Class Counsel is experienced in this type of class litigation, recognizes the costs and risks of prosecuting this Action, and believe that it is in the Class Representative's interest and the interest of all Class Members to resolve this Action and any and all claims against CDCR and Released Parties arising from the conduct, acts or omissions, as alleged in the Action.

5. Class Counsel and the Class Representative, in their respective capacities relating to this Action, reasonably believe and hereby attest that the claims asserted in the Action have merit and, if required, Class Counsel and Plaintiff would produce sufficient admissible evidence supporting their claims. Class Counsel and the Class Representative have examined and considered the benefits to be obtained under the Settlement set forth in this Agreement and the risks associated with the continued prosecution of the Action. Class Counsel and the Class Representative have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

6. CDCR denies all allegations of wrongdoing made by Plaintiff and the Settlement Class Members in the Action. CDCR denies that it or Defendants are legally responsible or liable to the Plaintiff or Settlement Class Members for any of the matters or causes of action asserted in this Action, or that could have been asserted because of the Event. However, CDCR has concluded that settlement is desirable to avoid the time, expense, inconvenience, distraction, and inherent uncertainties of defending protracted litigation and to resolve, finally and completely, all pending and potential causes of action of the Plaintiff and the Settlement Class Members relating to causes of action which were or could have been asserted by the Plaintiff and Settlement Class Members in this Action.

7. In the event this Settlement does not obtain final court approval, including after any timely appeals have been fully and finally adjudicated, nothing in this Settlement Agreement shall be deemed a waiver of Defendants' objections and defenses, including to class certification, relating to or arising from the allegations set forth in the Complaint. Nothing in this Settlement Agreement, the documents referenced in this Settlement Agreement, nor any action taken to carry out this Settlement Agreement is, may be construed as, or may be used as an admission, concession, or indication by or against Defendants of any fault, wrongdoing, or liability whatsoever.

8. Significant arm's-length settlement negotiations have taken place between the Parties, including a full-day mediation with retired United States District Court Magistrate Judge Kendall J. Newman, and, as a result, this Settlement Agreement has been reached without collusion, subject to the Court-approval process set forth in this Settlement Agreement and the Parties have agreed to a global, final settlement of the Action that renders the need for further litigation unnecessary.

9. The Parties expressly agree that the consideration provided by the Released Parties under this Settlement Agreement is monetary consideration only. This Settlement Agreement does not require, and shall not be construed to require, CDCR, the State, Defendants, or any Released Party to implement or modify any policy, practice, procedure, training, staffing, classification, use-of-force practice, medical practice, operational practice, monitoring program, reporting requirement, or other prospective or injunctive relief.

10. Now, therefore, in consideration of the covenants set forth in this Settlement Agreement, without any admission of liability or wrongdoing by any Party, Plaintiff, on behalf of herself and the Class Members, and CDCR agree to settle this Action in its entirety with respect to all Released Claims on the terms and conditions set forth in this Settlement Agreement. The Parties intend this Settlement Agreement to bind the Plaintiff and the Settlement Class Members.

## III. SETTLEMENT TERMS AND CONDITIONS

### CLASS CERTIFICATION

1. Class Certification. The Parties stipulate that the Court may and should certify this Action to proceed as a class action under Federal Rule of Civil Procedure 23 for settlement purposes only. The Parties understand and agree that the Settlement Class Members are the 142 current and formally incarcerated persons identified in **Attachment 2**.

2. Class Counsel. The Parties Stipulate that Plaintiff's Counsel shall be deemed "Class Counsel" following Preliminary Approval. Class Counsel shall fairly and adequately protect the interests of the Settlement Class.

### PRELIMINARY AND FINAL COURT APPROVAL

3. Preliminary Approval of the Settlement. After execution of this Settlement Agreement, Plaintiff's Counsel shall promptly move the Court for Preliminary Approval of the Settlement, conditional certification of the Settlement Class for settlement purposes only, approval of the Class Notice and the Claim Form, approval of appointment of the Settlement Administrator, approval of the method of disseminating Notice of the Settlement to the Settlement Class Members and setting a date for the Final Approval Hearing. In conjunction with such motion, Plaintiff's Counsel will submit this Settlement Agreement, together with the Attachments hereto, and any other documents necessary to implement the Settlement. Plaintiff's Counsel, after Counsel for CDCR's pre-filing review, shall prepare and file all documents in connection with the Motion for Preliminary Approval.

(a) If the Court declines to enter a Preliminary Approval or Final Approval Order, the Parties shall use reasonable, good-faith efforts to address any defect(s) identified by the Court. No Party shall be required to accept a material change to the Settlement Agreement, incur any additional financial obligation, increase the Settlement Fund, provide any additional consideration, or assume any obligation not expressly stated in this Settlement Agreement.

(b) If the Court does not approve the Settlement, or if approval is subsequently reversed or vacated, this Settlement Agreement shall be deemed terminated, and

the Parties shall be restored to their respective positions immediately preceding execution of this Settlement Agreement. No Party shall have waived any claim, defense, objection, or argument by virtue of this Settlement Agreement.

4. Final Approval of the Settlement. A Final Approval Hearing shall be noticed for a date set by the Court at the Preliminary Approval Hearing, to allow for the provision of Class Notice, the expiration of the Objection/Exclusion Deadline, expiration of the Claim Deadline, and the claims review and evaluation process. At least fifteen (15) calendar days before the Final Approval Hearing, Class Counsel shall file a declaration, with their motion in support of Final Approval, attesting to the fact and manner of dissemination of the Class Notice and Claim Forms.

(a) Assuming Final Approval of the Settlement and of this Settlement Agreement, the Parties shall obtain entry of an Order of Dismissal and Judgment. The Parties agree to the Court's continuing jurisdiction as set forth in this Settlement Agreement.

(b) Class Counsel shall be solely responsible for defending the Settlement and the Final Approval Order and Judgment against any appeal or challenge brought by a Settlement Class Member, except to the extent CDCR elects, in its sole discretion, to participate in such defense. Nothing in this Settlement Agreement shall require CDCR, or any Released Party, to incur attorneys' fees or costs beyond the Settlement Fund in connection with any appeal, objection, or challenge to the Settlement.

5. Dismissal With Prejudice. On entry of the Final Approval Order, the Court must dismiss the Action in its entirety with prejudice in accordance with the terms of this Settlement Agreement and Federal Rules of Civil Procedure 23(e) and 41(a)(2). The Final Approval Order shall enjoin the prosecution of any litigation or class action by Plaintiff or any Settlement Class Member related to or arising out of the Event, this Action, and/or Released Claims, including unknown claims, except as necessary to enforce the express terms of this Settlement Agreement.

## SETTLEMENT FUNDING AND PAYMENTS

6. Settlement Fund. CDCR agrees to fund the Settlement Fund in an amount not exceeding $10,000,000. The Settlement Fund amount is the sole and exclusive monetary consideration to be provided by CDCR, Defendants, the State, or any Released Party in connection with this Settlement Agreement. Except for providing Class Data as expressly required by this Settlement Agreement, CDCR, Defendants, the State, and the Released Parties shall have no obligation to make any additional payment, reimbursement, contribution, expenditure, or other financial commitment in connection with the Settlement, including for attorneys' fees, administration, Class Member's restitution, liens, or fees, taxes, enforcement, interest, appeals, objector proceedings, or any other expense.

7. Settlement Payment to the Fund. No later than one hundred and eighty (180) calendar days after the date of entry of the Preliminary Approval Order or forty-five (45) calendar days after the date of Final Approval, whichever is later, CDCR will advance to the Settlement Administrator the Settlement Fund. CDCR will provide all necessary information to the Settlement Administrator, including the Payee Data Record (State of California Form STD

204) and Class Data as required by the Settlement Agreement, within seven (7) calendar days of the date of entry of the Preliminary Approval Order. The Settlement Administrator shall not distribute any portion of the Settlement Fund except as expressly authorized by the Court and this Settlement Agreement. If Final Approval does not become final, the Administrator shall return all Settlement Funds to CDCR within 10 calendar days after termination, and CDCR shall have no obligation to fund any amount.

8. Payments from the Settlement Fund. The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements as described in this Settlement Agreement. The Settlement Administrator shall pay from the Settlement Fund the following amounts as specified in the Court's order granting final approval of the Settlement: the Administrator's Expenses Payment; Class Counsel's Fee and Expense Award; the Incentive Fee; all Settlement Awards to Settlement Class Members; and any other fees, costs, expenses, and reimbursements determined by the Parties or the Court to be reasonably necessary and appropriate to execute the terms of this Settlement Agreement before Settlement Awards are issued to Settlement Class Members. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Settlement Agreement, any addendums signed by Plaintiff and CDCR, or as approved by the Court.

9. Incentive Fee to the Class Representative. Class counsel may move the Court for an Incentive Fee from the Settlement Fund for the Class Representative, Alexis Hooper, in an amount not to exceed $25,000 in recognition of the time and effort reportedly taken by her as the Class Representative in commencing the Action. CDCR will not oppose Class Counsel's request for an Incentive Fee payment from the Settlement Fund up to $25,000. The Incentive Fee shall be in addition to the other benefits available to the Plaintiff as a Settlement Class Member under the Settlement Agreement and shall be taken from the Settlement Fund. If the Court awards an amount less than $25,000.00, the difference shall remain in the Settlement Fund for distribution to Settlement Class Members. Plaintiff assumes full responsibility and liability for taxes and obligations on any Incentive Fee. The Settlement is neither conditioned upon the Court's approval of the Incentive Fee to the Class Representative, nor the amount of the Incentive Fee.

10. Payment of Class Counsel's Fees and Expenses. Class Counsel may move the Court for an award of Class Counsel's attorneys' fees and costs in an amount not to exceed 25% of the Settlement Fund, or $2,500,000 (the Fee and Expense Award). CDCR will not oppose Class Counsel's request for an award of attorneys' fees and costs in this Action not to exceed $2,500,000, which are to be paid from the Settlement Fund. Any amount awarded by the Court less than $2,500,000 shall remain in the Settlement Fund for distribution to Settlement Class Members.

(a) No attorneys' fees, costs, or expenses shall be recoverable from CDCR, Defendants, the State, or any Released Party beyond the Fee and Expense Award, including fees or expenses incurred in connection with any appeal, objection, enforcement proceeding, or dispute concerning administration of the Settlement.

(b) The Settlement Administrator shall pay from the Settlement Fund any Fee and Expense Award awarded by the Court within ten (10) calendar days after the Effective

Date, or as otherwise directed by the Court. Payment will be made as directed by Class Counsel. The Settlement is not conditioned on the Court's approval of an award in any particular amount for the Class Counsel Fee and Expense Award. Released Parties shall have no liability to Class Counsel or any other Plaintiff's counsel arising from or relating to any claim to any portion of any Class Counsel Fee and Expense Award. Class Counsel assumes full responsibility and liability for taxes owed on the Class Counsel's Fees and Expense Award and holds Released Parties harmless, and indemnifies Released Parties, from any dispute or controversy regarding any division or sharing of any of these payments.

11. Settlement Awards to Settlement Class Members and Claims Process. Settlement Class Members shall make Claims and be entitled to Settlement Awards as follows.

(a) *Basic Compensation*. All Settlement Class Members are entitled to basic compensation as a result of their presence at and involvement in the Event. Settlement Class Members who do not opt-out of the Settlement by submitting a Request to Be Excluded and who do not return a Claim Form by the Claim Deadline qualify for and will receive basic compensation with no obligation to complete and return a Claim Form (the Basic Compensation Group).

(b) *Claim for Enhanced Compensation*. Settlement Class Members who believe they are entitled to enhanced compensation (the Enhanced Compensation Group), as provided in the Claim Form, must complete and timely return a Claim Form to be considered for enhanced compensation. Settlement Class Members seeking enhanced compensation shall bear the burden of establishing eligibility for enhanced compensation. The Settlement Administrator shall evaluate timely Claim Forms based on the information and documentation submitted by the claimant and any information expressly authorized for consideration under this Settlement Agreement. In evaluating such a request, the Settlement Administrator shall be guided by evidence of whether the claimant was: (1) classified as "mobility impaired" and/or was using a walker or wheelchair; (2) had pre-existing conditions such as asthma or pulmonary disfunction, which made the claimant particularly vulnerable to chemical agents employed; (3) suffered seizures during the Event; (4) was directly hit by a chemical agent canister deployed by a staff member or by a less-lethal projectile such as a 40 MM sponge round or "stinger rounds" (rubber balls); (5) received medical treatment in the aftermath of the Event for injuries or conditions related to the Event; and/or, (6) suffered and continue to suffer extreme mental distress (such as PTSD) as a result of the Event.

(i) Settlement Class Members who believe they are entitled to compensation beyond the basic compensation must complete and return the Claim Form, by First-Class Mail, postmarked on or before the Claim Deadline, responding to the questions on the Claim Form under penalty of perjury and providing any supporting documentation.

(ii) The Settlement Administrator shall determine whether a claimant qualifies for enhanced compensation within ten (10) calendar days of the receipt of a Claim Form or within ten (10) calendar days of the Claim Deadline, whichever is later. As part of its determination, the Settlement Administrator may elect to request records from CDCR, but it is not obligated to do so. In the event the Settlement Administrator requests records from CDCR in connection with evaluation of an enhanced claim, CDCR will use its best efforts to provide the

requested records within 7 days of any such request. In the event the records are not provided within 7 days of the Administrator's request, that claimant's representations on the claim form shall be accepted by the Settlement Administrator. The Settlement Administrator shall promptly notify any claimant who submitted a timely claim for enhanced compensation of its decision allowing or denying the enhanced compensation, but shall provide notice of a decision to all Class Members who timely submitted Claim Forms no later than thirty calendar days after the Claim Deadline.

(iii) The Settlement Administrator's determination for each enhanced compensation request shall be final and binding, unless the Court determines that the Administrator failed to apply the standards set forth in this Settlement Agreement.

(iv) CDCR has no obligation to investigate individual claims, obtain medical records, interview claimants, or otherwise establish or disprove eligibility for enhanced compensation.

(c) *Determination of Basic and Enhanced Compensation*. The amount available for distribution to Settlement Class Members shall equal the Settlement Fund, less the Fee and Expense Award approved by the Court, the Incentive Fee approved by the Court, the Administrator Expenses Payment incurred by the Settlement Administrator and approved by the Court, and any other amounts expressly authorized by this Settlement Agreement or the Court. The Settlement Administrator shall award each Basic Compensation Group member 3 points and each Enhanced Compensation Group Member 4 points. The Settlement Administrator shall divide the amount available for distribution to the Settlement Class Members by the total number of points assigned to all participating Settlement Class Members to determine the value of each point.

For example, assuming no opt-outs, 50% of the Settlement Class (71 Settlement Class Members) are assigned to the Basic Compensation Group and 50% of the Settlement Class Members (71 Settlement Class Members) are assigned to the Enhanced Settlement Group, the Basic Compensation Group would generate 213 points (71 Settlement Class members multiplied by 3 points each) and the Enhanced Compensation Group would generate 284 points (71 Settlement Class Members multiplied by 4 points each), for 497 total points for all Settlement Class Members. If the amount available for distribution to the Settlement Class is, for example, $7,400,000, then dividing that amount by 497 points for both the Basic and Enhanced Compensation Groups results in $14,889.34 for each point. The Settlement Award for each Settlement Class Member in the Basic Compensation Group would therefore be $44,668.02 ($14,889.34 multiplied by 3 points), and the Settlement Award for the Enhanced Compensation Group would be $59,557.36 ($14,889.34 multiplied by 4 points).

12. <u>Settlement Award Disbursements Subject to Reduction for Restitution, Liens, and Fees</u>. Settlement Award payments to Settlement Class Members under this Settlement Agreement, including the Incentive Fee to the Class Representative, will be subject to all applicable federal and state laws and regulations, including but not limited to those governing deposits into inmate trust accounts. CDCR is obligated by Penal Code Section 2085.8 to collect any amounts owed by a Settlement Class Member, including the Class Representative, pursuant

to a restitution fine or order, including any administrative fees related to such amounts. CDCR may also be obligated to disburse Settlement Award funds to lienholders for all outstanding liens against a Settlement Class Member currently incarcerated with CDCR, whether known or unknown by the Settlement Class Member, if any, which amounts must be deducted from the incarcerated Settlement Class Member's Settlement Award and paid on the incarcerated Settlement Class Member's behalf to the lienholder(s).

(a) Following Final Approval by the Court, CDCR will identify those Settlement Class Members who have outstanding restitution, liens, administrative fees, or other fees obligations as described above and will provide a list of all Settlement Class Members currently incarcerated or on parole who have outstanding restitution, liens, administrative fees, or other fees obligations as described above to the Settlement Administrator within fourteen (14) calendar days of Final Approval.

(b) Upon distribution of the Settlement Awards, the Settlement Administrator shall send each individual Settlement Award for each Settlement Class Member currently incarcerated or on parole and identified as owing restitution, liens, administrative fees, or other fees as follows:

CDCR Inmate Accounting
Attn: Settlements
P.O. Box 276088
Sacramento, CA 95827

CDCR will deduct from each individual Settlement Award restitution, liens, administrative fees, or other fees CDCR determines is owed by that Class Member and will deposit the remaining balance of the Settlement Award in that Class Member's inmate trust account (if incarcerated) or pay the remaining balance to any Class Member (if on parole). Upon request, CDCR shall provide the Settlement Class member a statement reflecting deductions from their Settlement Award.

Any deduction, withholding, payment, or transfer made by CDCR pursuant to applicable law concerning restitution, liens, inmate trust accounts, garnishment, or other legally required deductions shall not constitute a breach of this Settlement Agreement or a reduction in the Settlement Fund. Neither CDCR nor any Released Party shall be liable to any Settlement Class Member, lienholder, creditor, or other person for any deduction or payment made in good-faith compliance with applicable law.

13. Disbursement of Settlement Awards. Within fifteen (15) calendar days after receipt of the Settlement Fund, the Settlement Administrator shall compute the value of the basic and enhanced claims and distribute the Settlement Awards by Award checks to CDCR Inmate Accounting as provided in Paragraph III.12 above or to the Settlement Class Members' last known addresses provided by CDCR or provided by Settlement Class Members.

14. Disposition of Unclaimed Awards and Returned as Undeliverable Awards. The mailing addresses of Settlement Class Members whose checks are returned as undeliverable will be searched for through the National change of address system or similar databases used for such

purposes and checks mailed to those addresses. Class Counsel and the Settlement Administrator are solely responsible for conducting any searches and any costs related to such searches shall be paid from the Administrator Expenses Payment. Any Participating Class Members who do not timely cash their Settlement Award check will be considered as having waived any right to a Settlement Award under this Settlement Agreement. Checks not cashed and not returned as undeliverable within six (6) months of mailing will be voided and the funds from such checks will be reserved for donation to a 501(c)(3) non-profit corporation working with current or former female offenders mutually agreed to by Class Counsel and CDCR (Cy Pres Award). The recipient of the Cy Pres Award is not considered a party to this Settlement Agreement, nor shall have standing to enforce any portion of this Settlement Agreement. In the event a check is returned as undeliverable and the Settlement Administrator is unable to locate a new address, that check will be cancelled and the funds associated with the un-cashed checks will be tendered to the California State Controller as unclaimed property in the name of the Settlement Class Member.

15. Tax Allocation of Settlement Awards to Participating Settlement Class Members. Settlement Awards will be reported on IRS Form 1099 by the Settlement Administrator, if required by law. Participating Settlement Class Members assume full responsibility and liability for any taxes owed on their Settlement Award.

16. Denial of Final Approval of the Settlement. If the Settlement Agreement does not receive Final Approval or does not otherwise become final, CDCR shall have no obligation to pay the Settlement Fund. Any Settlement Administrator expenses properly incurred before termination and expressly authorized by this Settlement Agreement and approved by the Court may be paid as directed by the Court.

## CLASS NOTICE, REQUESTS FOR EXCLUSION, AND OBJECTIONS TO SETTLEMENT

17. Notice to Settlement Class Members. Within seven (7) calendar days of Preliminary Approval, CDCR shall deliver to the Settlement Administrator and Class Counsel a list of the Settlement Class Members identified on Attachment 2, together with their most current last known addresses, including correct mailing addresses for any currently incarcerated Settlement Class Members, as reflected in records maintained by CDCR. This list shall be in Excel or similar file format for efficient and effective use and processing by Class Counsel and the Administrator. The Settlement Administrator shall be solely responsible for mailing, tracking, re-mailing, and documenting Class Notice and Claim Forms.

18. Mailing. Within fourteen (14) calendar days of receiving the list of Settlement Class Members' last known addresses, the Settlement Administrator shall distribute Claim Forms to all Settlement Class Members together with the Class Notice via First-Class Mail. Notices mailed to Settlement Class Members who are currently incarcerated shall be sent in an envelope bearing their name and CDCR number and prominently marked "CONFIDENTIAL LEGAL MAIL." The Settlement Administrator shall provide Counsel for CDCR and Class Counsel written notice of the date on which it substantially effected the first distribution/mailing of the Class Notice and Claim Form, which shall be the date from which the Claim Deadline is set. The Settlement Administrator will promptly notify Class Counsel and Counsel for CDCR of all notices for any Settlement Class Member that are returned by the USPS as undeliverable. Class

Counsel and CDCR shall work cooperatively with the Settlement Administrator to locate updated addresses so that the Settlement Administrator can re-mail the Class Notice as needed.

19. Requests for Exclusion from the Settlement: Any Settlement Class Member who wishes to be excluded from the Settlement must submit a Request to Be Excluded from the Settlement to the Settlement Administrator. To be effective, the Request to Be Excluded must be received by the Settlement Administrator, or post-marked, by the Objection/Exclusion Deadline. Plaintiff shall not request exclusion from the Settlement. The Settlement Administrator shall, within one (1) day of receipt of any Request to Be Excluded, provide notice of such request to Counsel for CDCR and Class Counsel.

(a) Any Settlement Class Member who does not timely file a Request to Be Excluded shall be deemed to have agreed to be bound by the Settlement, regardless of whether any such Settlement Class member submits a Claim Form, is awarded a Settlement Award, or actually receives the Notice of Class Action.

(b) Any Settlement Class Member who does not elect to be excluded from the Settlement may, but need not, enter an appearance through his or her own attorney, but must do so by filing a notice of appearance with the Court by the Objection/Exclusion Deadline. Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

20. Right to Void Settlement Due to Opt-Outs. CDCR, and only CDCR, shall have the sole right and in its sole discretion to void the Settlement if seven (7) or more Settlement Class Members submit a timely and otherwise valid request to be excluded from the Settlement. **If CDCR exercises this right, it shall provide notice, in writing, to Class Counsel, the Settlement Administrator, and the Court within fifteen (15) calendar days after the Objection/Exclusion Deadline. Failure to timely exercise this right will be deemed consent to the Settlement and a waiver of this right.**

21. Objections to Settlement. Any Settlement Class Member may object to the terms of the Settlement, including contesting the fairness of the Settlement and/or amounts of the Fee and Expense Award and Incentive Fee. Plaintiff shall not object to the Settlement.

(a) *Timeliness*. To be considered timely, an Objection must be mailed and postmarked no later than the Objection/Exclusion Deadline.

(b) *Valid Objection*. To state a valid objection to the Settlement, an objecting Settlement Class Member must mail their Objection to the Settlement Administrator, as stated in the Notice of Proposed Settlement of Class Action, and file an objection with the Court as stated in the Preliminary Approval Order, setting forth all of the following information in writing: (i) the objector's full name, current address, current telephone number, and be personally signed; (ii) the name and number of the Action; (iii) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position; (iv) provide copies of any other documents that the objector wishes to submit in support of his/her position; (v) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing; and (vi) whether the objecting Settlement Class Member

is represented by counsel and, if so, the name, address, and telephone number of his/her counsel.

22. Efficient Administration. The agreed-upon procedures and requirements for submitting objections in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Member's objection to the Settlement in accordance with the due process rights of all Settlement Class Members. The Preliminary Approval Order and Class Notice will require all Settlement Class Members who have any objections to submit the objections to the Settlement Administrator at the address set forth in the Class Notice, by no later than the Objection/Exclusion Deadline.

23. Settlement Administration. Promptly upon entry of the Preliminary Approval Order, Class Counsel shall retain a Settlement Administrator. The Settlement Administrator's total compensation and reimbursable expenses shall not exceed $20,000 without further order of the Court. If the Settlement Administrator's fees and expenses are less than $20,000, the difference will remain in the Settlement Fund. Any amount exceeding $20,000 shall be paid solely from the Settlement Fund and shall not be an obligation of CDCR, Defendants, the State, or any Released Party.

The Settlement Administrator shall verify that, as a condition of appointment, it agrees to be bound by this Settlement Agreement and to perform, as a fiduciary, all duties specified in this Settlement Agreement in exchange for the Administration Expenses Payment. Plaintiff and CDCR and their Counsel represent that they have no interest or relationship, financial or otherwise, with the Settlement Administrator other than a professional relationship arising out of prior experiences administering settlements.

24. Duties of the Settlement Administrator. In addition to other duties as set forth in this Settlement Agreement, the Settlement Administrator shall be solely responsible for the following.

(a) Preparing, printing, and disseminating the Class Notice and Claim Forms to the Settlement Class Members.

(b) Ensuring that mail sent to individuals incarcerated with CDCR includes the individual's name and CDCR number and is marked "CONFIDENTIAL LEGAL MAIL."

(c) Keeping track of Requests for Exclusion, including maintaining the original mailing envelope in which each request was received.

(d) Keeping track of Claim Forms, including maintaining the original mailing envelope in which each form was received.

(e) Keeping track of Objections, including maintaining the original mailing envelope in which each Objection was received.

(f) Keeping track of all other communications from Class Members, including maintaining the original mailing envelope in which any communication was received.

(g) Maintaining adequate records of its activities, including the dates of each mailing of Class Notice, returned mail, and other communications, and attempted written or electronic communications with Class Members.

(h) Promptly furnishing to Class Counsel and Counsel for CDCR: (i) copies of any Requests for Exclusion; (ii) copies of any Objections; (iii) Claim Forms and (iv) all other written or electronic communications received from the Settlement Class Members, including the date the Settlement Administrator receives the form, as evidenced by the transmission receipt.

(i) Determining whether Requests for Exclusion comply with the terms of this Settlement Agreement and are timely and valid to exclude the submitting Settlement Class Member from the Class.

(j) Determining whether Claim Forms comply with the terms of this Settlement Agreement and are timely and valid.

(k) Promptly preparing and distributing any rejection of a Request for Exclusion to the submitting Settlement Class Member. Rejections shall set forth the reasons for rejection, including the reason(s) the Request for Exclusion fails to comply with the terms of this Settlement Agreement.

(l) Delivering to Class Counsel and Counsel for CDCR in a reasonably timely manner, but in no event later than sixteen (16) calendar days before the Final Approval Hearing, a written report concerning all Class Notices mailed, all returned Class Notices, all Requests for Exclusion (valid and invalid), all Claims Forms, and all Objections.

(m) Establishing a Qualified Settlement Fund (QSF), as defined by 26 C.F.R. 1.468B-1, for the deposit of the Settlement Fund payment, ensuring that all taxes associated with the administration of the Settlement Fund are timely paid to the appropriate tax authorities and all tax filings are timely filed, which taxes, if any, shall be paid from the Settlement Fund.

(n) Determining the Settlement Awards of Settlement Class Members in accordance with this Settlement Agreement and communicating this to Class Counsel and Counsel for CDCR.

(o) Preparing a final list of Settlement Class Members, including notating the number and identity of Settlement Class Members determined to be eligible for enhanced compensation, and communicating this to Class Counsel and Counsel for CDCR.

(p) Distributing the Settlement Award payments for each Settlement Class Member, including remitting the Settlement Awards of any Settlement Class Member incarcerated or under parole supervision who owes restitution, liens, administrative fees, or other fees to CDCR Inmate Accounting, Attn: Settlements, PO Box 276088, Sacramento, CA 95827, which is to include individual's name and CDCR number, as described in Paragraph III.12.

(q) Distributing the Incentive Fee as described in Paragraph III.9, herein in

accordance with the terms and provisions of this Settlement Agreement.

(r) The Settlement Administrator shall be solely responsible for reporting Settlement Awards to Settlement Class Members on IRS Form 1099s, if required by law. Settlement Class Members assume full responsibility and liability for any taxes owed on their Settlement Awards.

(s) Preparing and distributing the Fee and Expense Award in accordance with this Settlement Agreement and the Final Approval Order in the manner directed by Class Counsel.

(t) Calculating and remitting the Cy Pres Award, if any, in the manner directed by Class Counsel and Counsel for CDCR, or order of the Court, within 15 days of approval of the organization by Class Counsel and Counsel for CDCR.

(u) Confirming in writing its completion of the administration of the Settlement, including providing any reports or final accounting as may be directed by the Court.

## IV. RELEASE OF CLAIMS

1. <u>Full Release.</u> It is the intention of CDCR and Plaintiff in signing this Settlement Agreement that it shall be effective as a full and final accord and satisfaction and release from all claims asserted, or that could have been asserted, in the Complaint. As of the Effective Date, Plaintiff and Settlement Class Members release Released Parties from any and all causes of action which Plaintiff or any Settlement Class Member has against the Released Parties as well as any and all claims, causes of action, damages, penalties, attorneys' fees, costs, and any other form of relief or remedy in law, equity, of whatever kind or nature and for any relief whatsoever, including monetary, injunctive, or declaratory relief, whether direct or indirect for any acts or omissions related to the Event and/or that were pled or could have been pled in the Action based on the facts, subject matter, or the factual or legal allegations in the Complaint or any amendment to the Complaint, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law ("Released Claims").

2. <u>Release of Unknown Claims.</u> Plaintiff and all Settlement Class Members release Defendants, and Released Parties, whether named or unnamed and whether served or unserved, from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the Complaint or Action. In furtherance of this intention, the Releasing Parties acknowledge and agree that, upon the Effective Date, Plaintiff and Settlement Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by California Civil Code section 1542, and any law of any state of the United States, or principle of common law or otherwise, which is equivalent to Section 1542 of the California Civil Code, with respect to the Released Claims. California Civil Code section 1542 states:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

This Settlement Agreement is the compromise of various disputed claims and shall not be treated as an admission of liability by any of the Parties or any Settlement Class Member for any purpose. The signature of or on behalf of the respective Parties does not indicate or acknowledge the validity or merits of any claim or demand of the other party.

3. Exclusive Remedy. Upon issuance of Final Approval: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members; (ii) Defendants and Released Parties shall not be subject to liability or expense of any kind to any Settlement Class Member for reasons related to the Event or Action except as set forth in the Settlement Agreement; and (iii) Settlement Class Members shall be permanently barred from initiating, asserting, or prosecuting any and all Released Claims against Defendants and Released Parties.

4. Class Representative and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## V. REPRESENTATIONS, WARRANTIES, AND COVENANTS

1. Class Counsel's Authority. Class Counsel represents and warrants that they have the authority, on behalf of Plaintiff, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated by the Settlement Agreement. This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiff and constitutes their legal, valid, and binding obligation.

2. CDCR Counsel's Authority. CDCR, through its attorneys, represents and warrants that it has the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated by the Settlement Agreement. The execution, delivery, and performance by CDCR of this Settlement Agreement and the consummation by it of the actions contemplated by the Settlement Agreement have been duly authorized by CDCR. This Settlement Agreement has been duly and validly executed and delivered by CDCR and constitutes its legal, valid, and binding obligation.

## VI. OTHER PROVISIONS

1. No Admission. This Settlement Agreement is not to be used in evidence (except in connection with obtaining approval of this Settlement Agreement and enforcing its terms) and shall not at any time be construed or deemed to be an admission or concession by CDCR or Defendants with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of Final Approval as contemplated by the Settlement Agreement. CDCR and Defendants specifically deny all of the

allegations made in connection with the Action. Neither this Settlement Agreement nor any class certified by the Court pursuant to it shall constitute, in this or in any other proceeding, an admission by CDCR or Defendants, or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Action, or any other litigation, except for the limited purpose of settlement pursuant to this Settlement Agreement. This Settlement Agreement also is made with the Plaintiff and Plaintiff's Counsel's express understanding and agreement that if for any reason this Settlement is not approved by the Court, CDCR and Defendants may continue to contest and deny that any class, including the proposed Settlement Class, is suitable for certification as a class under the law of any jurisdiction.

2. Confidentiality Prior to Preliminary Approval. Plaintiff, Class Counsel, CDCR, Defendants, and Defense Counsel separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate, and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) to the Parties and/or the Parties' attorneys or accountants, all of whom will be instructed to keep this Agreement confidential; (2) counsel in a related matter; (3) to the extent necessary to obtain bids for settlement administrators; (4) to the extent necessary to report income to appropriate taxing authorities; (5) in response to a court order or subpoena; or (6) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify each other Party of any judicial or agency order, inquiry, or subpoena seeking such information. Plaintiff, Class Counsel, CDCR, Defendants, and Defense Counsel separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, with any third party regarding this Agreement or the matters giving rise to this Agreement except to respond that "the matter was resolved," or words to that effect. This paragraph does not restrict Class Counsel's communications with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

3. No Representation of Notice Recipients by Class Counsel. Class Counsel shall not represent directly or indirectly, except in their capacity as Class Counsel pursuant to the terms of the Settlement Agreement, any Settlement Class Member who requests to be excluded from this Settlement. Moreover, Class Counsel shall not refer for representation any putative class member who requests to be excluded from the Settlement.

4. Plaintiff's Waiver of Right to be Excluded and Object. By signing this Settlement Agreement, Plaintiff agrees to be bound by the terms herein, not to request to be excluded from the Settlement Class, and not to object to any of the terms of this Settlement Agreement. Any such request for exclusion or objection by the Plaintiff shall therefore be void and of no force or effect and shall not render the Settlement Agreement unenforceable.

5. Best Efforts to Cure: This Settlement Agreement is entered into only for purposes of Settlement. In the event that Final Approval is not entered, or Final Approval is subsequently reversed on appeal, this Settlement Agreement, including any releases or dismissals under the Settlement Agreement, is canceled, and no term or condition of this Settlement Agreement, or any draft, or discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence

for any purpose, or used for any purposes whatsoever in the Action, and all Parties shall be restored to their prior rights and positions as if the Settlement Agreement had not been entered into. An appellate decision to vacate, reverse, or modify the Court's award of the Incentive Fee or any payments to Class Counsel shall not constitute a material modification of the Order of Dismissal and Judgment within the meaning of this paragraph, as long as the Settlement Fund remains unchanged.

6. Severability. Should any provision of this Settlement Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Settlement Agreement, but the Settlement Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

7. Headings. The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

8. Capitalized Words. Capitalized words, terms, and phrases are used as defined in Section I of the Settlement Agreement.

9. No representations. The consideration recited in this Settlement Agreement is the only consideration for this Settlement Agreement, and no representations, promises, or inducements have been made to the Parties, or any of their representatives, other than those set forth in this Settlement Agreement.

10. Modifications. This Settlement Agreement may not be modified or amended except in writing and signed by Plaintiff and CDCR.

11. No Tax Advice. Neither Plaintiff, Class Counsel, CDCR, Defendants, nor Counsel for CDCR are providing any advice regarding taxes or taxability, nor shall anything in this Settlement Agreement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 C.F.R. Part 10, as amended) or otherwise.

12. Execution. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

13. Costs, Expenses and Attorneys' Fees. Except as otherwise provided in this Settlement Agreement, each Party shall bear his, her, or its own attorneys' fees, expenses and costs associated with the Action and enforcement of the Settlement Agreement.

14. Reasonable Extensions. Plaintiff and CDCR reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in any of the Attachments or documents necessary to effectuate the settlement.

15. Jurisdiction of the Court. The Court shall retain jurisdiction solely for the limited purpose of approving, implementing, administering, and enforcing the express terms of this

Settlement Agreement and the Final Approval Order and Judgment. The Court's retained jurisdiction shall not expand the obligations of CDCR, Defendants, the State, or any Released Party beyond those expressly outlined in this Settlement Agreement.

The Court's retained jurisdiction shall terminate upon the later of: (a) completion of all Settlement Award distributions; (b) completion of any Cy Pres distribution; (c) payment of all Court-approved attorneys' fees, expenses, and Incentive Fee; and (d) submission of the Settlement Administrator's final accounting and certification of completion, and in no event later than 12 months after the Effective Date, except with respect to a proceeding timely commenced before expiration of that period to enforce a specific, express obligation of this Settlement Agreement.

Nothing in this paragraph shall authorize the Court to impose any monitoring, reporting, policy, training, operational, or other prospective obligation on CDCR, Defendants, the State, or any Released Party that is not expressly contained in this Settlement Agreement.

16. Mutual Agreement. The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

17. Entire Agreement. This Settlement Agreement constitutes the entire, fully integrated agreement among the Parties expressing the entire agreement of the Parties, and there are no other agreements, written or oral, express or implied, between the Parties, except as set forth in this Settlement Agreement.

18. Good Faith Cooperation. The Parties shall cooperate in good faith and use reasonable efforts to implement the express terms of this Settlement Agreement. No Party shall be required to agree to a material modification of this Settlement Agreement, increase the Settlement Fund, provide additional consideration, or assume any obligation not expressly stated herein. Before seeking judicial relief concerning any alleged dispute regarding implementation or interpretation of this Settlement Agreement, the Parties shall meet and confer in good faith. The Court's authority shall be limited to interpreting and enforcing the express provisions of this Settlement Agreement and the Final Approval Order and Judgment.

19. Use of Class Data. Class Data provided to Class Counsel or the Settlement Administrator in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and for no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule of court. Class Counsel and the Settlement Administrator shall treat Class Data as confidential and take reasonable and appropriate measures to safeguard such data from access and use by unauthorized persons. Any Class Data not necessary for Class Counsel's ethical retention

obligations shall be securely purged or destroyed ninety (90) days after the Settlement Fund distribution of all Awards or Cy Pres Award pursuant to Paragraph III.14.

20. Calculation of Time Periods. All time periods set forth in this Agreement shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, or default, from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days. Each of the Parties reserves the right, subject to the Court's approval, to seek any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement, and to modify or supplement any notice contemplated hereunder.

21. Waiver. Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any provision of this Settlement Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the Settlement Agreement's provisions.

22. California Law. Unless expressly stated otherwise in this Settlement Agreement, the terms, conditions, and provisions of this Settlement Agreement are governed by and interpreted under California law.

23. No Other Consideration. The consideration recited in this Settlement Agreement is the only consideration for this Settlement Agreement, and no representations, promises, or inducements have been made to the Parties, or any of their representatives, other than those set forth in this Settlement Agreement.

24. No Oral Modifications or Waiver. No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by Plaintiff and CDCR and approved as to form by Class Counsel and Defense Counsel. No waiver of any provision of this Settlement Agreement shall be binding unless executed in writing by the Party making the waiver. No waiver of any provision of this Settlement Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

25. Notices. Any notices or other documents that must or may be transmitted to Plaintiff's Counsel, and/or Counsel for CDCR pursuant to any part of this Settlement Agreement, shall be transmitted to each of the following (i) via email, unless the sender does not have access to email; and (ii) either First-Class Mail or overnight courier at the sender's discretion.

/ / /

/ / /

/ / /

For documents to Counsel for Defendants De La Cruz, Arroyo, Beccera, and Ramolete and Counsel for CDCR:

Alicia A. Bower, Supervising Deputy Attorney General
Alicia.Bower@doj.ca.gov
Jacqueline Kallberg, Deputy Attorney General
Jacqueline.Kallberg@doj.ca.gov
Arthur B. Mark III, Deputy Attorney General
Arthur.Mark@doj.ca.gov
Office of the California Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 738-9060
Fax: (916) 732-7920

For documents to Counsel for Defendant Mendoza:

Andrada & Associates
J. Randall Andrada, SBN 70000.
1939 Harrison Street, Suite 612
Oakland, CA 94612
Telephone: (510) 287-4160
E-Mail: randrada@andradalaw.com

For documents to Plaintiff's Counsel and Class Counsel:

Mark E. Merin
mark@markmerin.com
Paul H. Masuhara
paul@markmerin.com
Law Office of Mark E. Merin
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

## VII. ATTACHMENTS

Attachment 1—Claim Form

Attachment 2—Settlement Class

Attachment 3—Notice of Proposed Settlement of Class Action

Attachment 4—Settlement Award Calculation Method

## VIII. SIGNATURES

Dated: 09/30/2026. By: ______________________
Alexis Hooper
*Plaintiff and Class Representative,*
*Individually and for the Class*

Dated: ______________ By: ______________________
Sarah Brattin
*Duly Authorized Representative of California*
*Department of Corrections and Rehabilitation*

Approved as to form:

Dated: ______________ By: ______________________
Arthur B. Mark III, Deputy Attorney General
*Counsel for Defendants A. De La Cruz, I. Arroyo,*
*E. Beccera, and V. Ramolete*

Dated: ______________ By: ______________________
Randall Andrada
*Counsel for Defendant C. Mendoza*

Dated: ______________ By: ______________________
Justin Harris
*Counsel for Defendant M. Felix*

Dated: ______________ By: ______________________
Mark E. Merin
*Class Counsel and Counsel for Plaintiff and Class*
*Representative Alexis Hooper*

Page 24 of 24

## VIII. SIGNATURES

Dated: ____________________ By: ____________________________________

Alexis Hooper
*Plaintiff and Class Representative, Individually and for the Class*

Dated: 10/20/2026 By: Signed by: Sarah Brattin 6B4A557817D2415...

Sarah Brattin
*Duly Authorized Representative of California Department of Corrections and Rehabilitation*

Approved as to form:

Dated: October 15, 2026 By: ____________________________________

Arthur B. Mark III, Deputy Attorney General
*Counsel for Defendants A. De La Cruz, I. Arroyo, E. Beccera, and V. Ramolete*

Dated: ____________________ By: ____________________________________

Randall Andrada
*Counsel for Defendant C. Mendoza*

Dated: ____________________ By: ____________________________________

Mark E. Merin
*Class Counsel and Counsel for Plaintiff and Class Representative Alexis Hooper*

## VIII. SIGNATURES

Dated: ____________________ By: ________________________________________
Alexis Hooper
*Plaintiff and Class Representative,*
*Individually and for the Class*

Dated: ____________________ By: ________________________________________
Sarah Brattin
*Duly Authorized Representative of California*
*Department of Corrections and Rehabilitation*

Approved as to form:

Dated: October 15, 2026 By: ________________________________________
Arthur B. Mark III, Deputy Attorney General
*Counsel for Defendants A. De La Cruz, I. Arroyo,*
*E. Becerra, and V. Ramolete*

Dated: October 20, 2026 By: ________________________________________
Randall Andrada
*Counsel for Defendant C. Mendoza*

Dated: ____________________ By: ________________________________________
Mark E. Merin
*Class Counsel and Counsel for Plaintiff and Class*
*Representative Alexis Hooper*

## VIII. SIGNATURES

Dated: ____________________ By: ________________________________________
Alexis Hooper
*Plaintiff and Class Representative,*
*Individually and for the Class*

Dated: ____________________ By: ________________________________________
Sarah Brattin
*Duly Authorized Representative of California*
*Department of Corrections and Rehabilitation*

Approved as to form:

Dated: ____________________ By: ________________________________________
Arthur B. Mark III, Deputy Attorney General
*Counsel for Defendants A. De La Cruz, I. Arroyo,*
*E. Beccera, and V. Ramolete*

Dated: ____________________ By: ________________________________________
Randall Andrada
*Counsel for Defendant C. Mendoza*

Dated: 10/20/26 By: ________________________________________
Mark E. Merin
*Class Counsel and Counsel for Plaintiff and Class*
*Representative Alexis Hooper*

# ATTACHMENT 1

# CLASS ACTION CLAIM FORM FOR ENHANCED COMPENSATION

* * *

*Alexis Hooper, and the class of similarly situated persons she seeks to represent,*
*v.*
*Anissa De La Cruz, et al.*

United States District Court for the Eastern District of California, Fresno Division
Case No. 1:25-cv-00610-JLT-HBK
* * *

If you were an incarcerated person assigned to Housing Unit 513 on Facility D at the Central California Women's Facility (CCWF) of the California Department of Corrections and Rehabilitation (CDCR) on August 2, 2024, and you were placed in the Dining Hall (Building 701) on Facility D, and exposed to chemical agents, including Oleoresin Capsicum or OC spray (commonly referred to as pepper spray), then escorted to the Facility D yard, where you also may have been exposed to chemical agents, or subjected to other forms of force, you are a member of the class and entitled to compensation (subject to any restitution or liens you may owe). Provided you are an eligible Settlement Class Member and have not previously settled or released your claims, you will receive payment of any compensation to your inmate trust account if still incarcerated, or by check to your last known address, without completing and returning this Claim Form. In other words, **you need do nothing to receive compensation under the settlement**.

If you believe, after reading the Claim Form, that you are entitled to enhanced compensation (subject to any restitution or liens you may owe), you must complete the Claim Form, sign it under penalty of perjury, and submit it to the Claims Administrator by first class U.S. mail, post-marked by the Claim Deadline of XXX. You may and should submit any documents that support your answers to the question below to demonstrate entitlement to enhanced compensation.

**CLAIM TO BE SUBMITTED BY PERSONS SEEKING ENHANCED COMPENSATION**

Name: ______________________________ Phone #: ______________________

Address: ____________________________ Date of Birth: __________________

______________________________ Social Security #: ________________

______________________________ CDCR #: ______________________

______________________________ Driver's License #: ______________

**Question No. 1**: **Were you an incarcerated person assigned to Housing Unit 513 on Facility D at CCWF on August 2, 2024, removed from your housing unit and taken to the Facility D Dining Hall (Building 701) where you were exposed to chemical agents, such as pepper spray, flex-cuffed, and then escorted to the yard where you were again exposed to chemical agents or other forms of force?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 1 and believe you are entitled to enhanced compensation beyond the basic compensation, answer the remaining questions and submit this claim form before the Claim Deadline of XX.

**Question No. 2**: **Before the August 2, 2024 use-of-force incident, had you been diagnosed with asthma or other pulmonary condition that made you more vulnerable to exposure to chemical agents, such as pepper spray or teargas?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 2, provide the following information. If more space is needed, you may attach additional pages, which are incorporated into this document.

With what condition were you diagnosed? ______________________________________
When, where, and by whom were you diagnosed? ________________________________
______________________________________________________________________
Did you inform CDCR personnel about this diagnosis? ___________________________
If you informed CDCR personnel about this diagnosis, when and how did you inform CDCR personnel? ____________________________________________________________

**Question No. 3**: **Before the events of August 2, 2024, had you been designated mobility impaired and was that designation still in effect on August 2, 2024?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 3, provide the following information.

Were you using a walker or wheelchair issued to you by CDCR medical staff in the cafeteria and/or wearing a CDCR mobility impairment vest that was issued to you by CDCR medical staff and designating you as "mobility impaired?

**Yes ☐ No ☐**

**Question No. 4**: **Were you directly struck by a chemical agent canister (often referred to as a "bomb") or a rubber bullet either in the dining hall or on the yard on August 2, 2024?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 4, provide the following information.

The name (and CDCR number if the individual was/is an incarcerated person) of two witnesses who can corroborate that you were directly struck:

Incarcerated Person/Witness # 1: ______________________________
Incarcerated Person/Witness # 2: ______________________________

**Question No. 5**: **Did you have a seizure or lose consciousness during the August 2, 2024 incident?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 5, provide the following information.

The name and CDCR number of two witnesses who can corroborate that you had a seizure or lost consciousness:

Incarcerated Person/Witness # 1: ______________________________
Incarcerated Person/Witness # 2: ______________________________

**Question No. 6: Did you receive medical care for injuries you suffered as a result of the August 2, 2024 incident?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 6, provide the following information.

For what complaint did you receive medical treatment? ____________________
______________________________

When did you receive medical treatment? ______________________________
Where did you receive medical treatment? ______________________________
______________________________

When, if at all, did the condition for which you received medical treatment resolve?
______________________________

**Question No. 7: Are you still suffering from any injuries you sustained during the August 2, 2024 incident?**

**Yes ☐ No ☐**

If you answered "Yes" to Question No. 7, provide the following information.

Describe the nature, duration, frequency, and intensity of any suffering you are continuing to experience, and provide the names and CDCR number of at least two witnesses who can corroborate your continued suffering, attaching additional pages, if necessary:

______________________________
______________________________
______________________________
______________________________
______________________________
______________________________

______________________________________________________________________

______________________________________________________________________

**NOTE: ANSWERS TO THE ABOVE QUESTIONS MAY BE CORROBORATED BY CDCR RECORDS. PLEASE PROVIDE DOCUMENTATION TO SUPPORT YOUR ANSWERS AND SIGN THE ATTACHED MEDICAL RECORDS RELEASE. THOUGH THE ADMINISTRATOR MAY ELECT TO REQUEST RECORDS, IT IS NOT OBLIGATED TO DO SO. ACCORDINGLY, PLEASE SUBMIT DOCUMENTATION YOU BELIEVE SUPPORTS YOUR CLAIM WITH THIS CLAIM FORM.**

****PLEASE NOTE THAT THE ADMINISTRATOR'S DETERMINATION REGARDING WHETHER YOU QUALIFY FOR ENHANCED COMPENSATION IS FINAL AND UNREVIEWABLE. IF YOUR CLAIM FOR ENHANCED COMPENSATION IS REJECTED, YOU WILL STILL BE ENTITLED TO A BASIC COMPENSATION AWARD.****

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT.**

Name: ____________________________________________________________

CDCR No.: ______________________

Date: _______________ Signature: _______________________________________

Mail the completed Claim Form to the Claims Administrator as follows:

XXXX

**The completed Claim Form must be post-marked by XXX.**

# ATTACHMENT 2

| | NAME | CDCR NO. |
|---|---|---|
| 1. | Acord, Irene Naomi Mae | WH1275 |
| 2. | Adams, Lilleybreeze Franco | WH1283 |
| 3. | Alaniz, Margaret Jeanette | WF3840 |
| 4. | Ambriz, Monique | WF9912 |
| 5. | Amezcua, Joanna | WF7913 |
| 6. | Arcaina, Amanda | WG7223 |
| 7. | Arevalo, Kayla Marie | WG5946 |
| 8. | Aviles, Yolanda Irene | WF2463 |
| 9. | Banks, Robbie | W90508 |
| 10. | Battles, Kendra Lorraine | WH2713 |
| 11. | Black, Shawanda Sharice | WG9457 |
| 12. | Bowlin, Heather Ellen | WH2962 |
| 13. | Bracken, Antoynisha | WH2368 |
| 14. | Brun, Candice Marie | WH1459 |
| 15. | Caldera, Michelle Estelle | WE9622 |
| 16. | Call, Alexis Michelle | WH3054 |
| 17. | Cardenas, Melissa Yvonne | WG7756 |
| 18. | Clark, Kayla Nicole Kim | WG6708 |
| 19. | Clayton, Tekeya Jasmine | WG6087 |
| 20. | Collins, Saroye | WH2602 |
| 21. | Colvin, Rene | WH2878 |
| 22. | Comier, Tonya Patrice | WF8147/WH4793 |
| 23. | Conner, Champayneleessence | WF4730 |
| 24. | Duenas, Tamayajosephine | WE2054 |
| 25. | Durinzi, Martha Rosario | WH2773 |
| 26. | Eddy, Deborah Kay | WH2975 |
| 27. | Elizondo, Jhoani | WG5799 |
| 28. | Emerson, Bijan Monae | WF5426 |
| 29. | Epps, Franchune Dyuel | WA7723 |
| 30. | Escamilla, Connie Marie | WG8515 |
| 31. | Espinoza, Evelyn Angelina | WG9687 |
| 32. | Evans, Torri Lache | WG9377 |
| 33. | Falcon, Claudia | WH2497 |
| 34. | Flores, Keani Isalyn | WH0796 |
| 35. | Flores, Marissa Sunshine | WH3033 |
| 36. | Fults, Josephine Lorine | WH2185 |
| 37. | Garcia, Calista Annette | WE6930 |
| 38. | Garcia, Crystal Angela | WH3380 |
| 39. | Garcia, Jeannette | WG4289 |
| 40. | Garcia, Yovana | WH3088/WH5977 |
| 41. | Garduno, Christy Annette | WF5236 |

| | NAME | CDCR NO. |
|---|---|---|
| 42. | Godley, Tyronda Shenise | WH2498 |
| 43. | Gomez, Jennie | WH3060 |
| 44. | Gonzalez, Azucena | WH2927/WH6089 |
| 45. | Gonzalez, Sandy | WG6501 |
| 46. | Graham, Taquesta | WG8973 |
| 47. | Grajeda, Jessica | WH2156 |
| 48. | Green, Raquel Lesha | WF6322 |
| 49. | Guerrero, Martitsa Marie | WH0007 |
| 50. | Guzman Murcia, Ana Lidia | WH1453 |
| 51. | Hall, Raven | WG4830 |
| 52. | Harris, Annette S | WE7271 |
| 53. | Harris, Yolanda Lafaye | WH0311 |
| 54. | Hegedus, Nicole Rae | WH1519 |
| 55. | Henderson, Jacqueline | WH0609 |
| 56. | Hernandez, Angelina Maria | WF8394 |
| 57. | Hodges, Kijana | WG7259 |
| 58. | Holt, Angela Marie | WH1668 |
| 59. | Hooper, Alexis Unique | WH1989 |
| 60. | Hurwitz, Katherine Elizabeth | WH0770 |
| 61. | Hutchison, Shyenne Armanda | WE8860 |
| 62. | Jackson, Denise | WH2852 |
| 63. | Jackson, Ladawn Marie | WH1653 |
| 64. | James, Tameka | WH3329 |
| 65. | Joaquin, Joaquina Patrice | WG1945 |
| 66. | Johnsontriplett, Yosaya Venae | WG3426 |
| 67. | Jones, Asia | WH1849 |
| 68. | Jurado, Nina Renee | WH2431 |
| 69. | Kakar-Savala, Inez | WH1793 |
| 70. | Kinslow, Asia Maria | WH0748 |
| 71. | Lawrence, Dayshawna Nichole | WE0356 |
| 72. | Lemus, Evaline Janet | WH2020 |
| 73. | Lindsay, Monica Yvonne | WG7962/WH6106 |
| 74. | Littlewiggins, Helene Nicole | WH2673 |
| 75. | Lordemann, Haley Ann | WH3003 |
| 76. | Lugo, Elizabeth Lizettte | WA7845 |
| 77. | Magallon, Misty Marie | WE9587 |
| 78. | Marchuk, Jennifer Renee | WG3794/WH7242 |
| 79. | Martin, Savannah | WH1309 |
| 80. | Martin, Valerie Dee | WA4277 |
| 81. | Martinez, Melissa | WE0656 |
| 82. | Miramontes, Christina | WH1310 |

| | NAME | CDCR NO. |
|---|---|---|
| 83. | Moorer, Andrea Dommique | WG6604 |
| 84. | Morales, Krystina Doraee | WG5042 |
| 85. | Moreland, Lashun | W85479 |
| 86. | Morenosantos, Clara | WH2224 |
| 87. | Morgan, Kina Malaika | W70804 |
| 88. | Mott, Reshay | WF0871 |
| 89. | Munoz, Karina | WG1317 |
| 90. | Navarro, Marcela Marie | WH0824 |
| 91. | Navarro, Reanna Marie | WH2943 |
| 92. | Oramas, Elijah | WG8838 |
| 93. | Ortega, Breana | WH3040 |
| 94. | Ortiz, Monica Elizabeth | WE6526 |
| 95. | Owens, Shatayza Paige | WG8426 |
| 96. | Patterson, Willina | WE7005 |
| 97. | Payne, Brittney | WH1353 |
| 98. | Pena, Sasha Jasmin | WG2991 |
| 99. | Pyatt, Yolanda | WF6286 |
| 100. | Rafael, Carolina | WH2864 |
| 101. | Ramirez, Andrea | WA6878 |
| 102. | Ramirez, Johnnyne Alberta | WG3024 |
| 103. | Ramirez, Sophia Mauricia | W89464 |
| 104. | Rayner-Seals, Cassie | WH1337 |
| 105. | Rhone, Lizy Ann | WG5998 |
| 106. | Rivera, Angela Marie Santiago | WH2629 |
| 107. | Rivers, Unique Shaunese | WG0608 |
| 108. | Roberto, Karissa Mechelle | WG7339 |
| 109. | Robinson, Tracy Ann | W93548 |
| 110. | Robles, Shawna Lenora | X31761 |
| 111. | Sainz, Crystal Marie | WH2351 |
| 112. | Sanchez, Marlene | WG6224 |
| 113. | Sarabia, Lauriena Pearl | WF9333 |
| 114. | Serra, Navely Dalay | WH1485 |
| 115. | Sierra, Rudie Reyleen | WF3823 |
| 116. | Silva, Shannon Marie | WH2959 |
| 117. | Smith, Charlye Lashaa | WF6972 |
| 118. | Smith, Terriana Dominique | WH3058 |
| 119. | Swan, Chelle Michelle | WF0224 |
| 120. | Swasey, Khala | WH2160 |
| 121. | Teaque, Ezekiel Miivaan | W54390 |
| 122. | Thomson, Tamara Nicole | WG6872 |
| 123. | Toledo, Sarah | WE3770 |

| | NAME | CDCR NO. |
|---|---|---|
| 124. | Torres, Beatriz Adriana Estrada | WG5179 |
| 125. | Torres, Jasmine | WG6924 |
| 126. | Torrez, Ciara | WG9711 |
| 127. | Trotter, Destiny Ann | WF1558 |
| 128. | Tuhn, Julie Joann | WH2882 |
| 129. | Turner, Azarri Kamia | WH1944 |
| 130. | Valdez, Christina Vanessa | WG9223 |
| 131. | Valencia, Jocelyn Yadira | WG7202 |
| 132. | Vela, Jessica Marie | WE5063 |
| 133. | Villanueva, Valerie Amber | WH2396 |
| 134. | Weed, Danielle Marie | WF8167 |
| 135. | Whichard, Najae | WH3330 |
| 136. | Williams, Jenelle | WH0708 |
| 137. | Williams, Joy Marie | WG2136 |
| 138. | Williams, Kimesha Monae | WH0908 |
| 139. | Williams, Macy | WH3263 |
| 140. | Williams, Safari | WF5130 |
| 141. | Woods, Kassandra | X18886 |
| 142. | Zarate, Stephanie Marie | WF7989 |

# ATTACHMENT 3

# NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

* * *

*Alexis Hooper, and the class of similarly situated persons she seeks to represent,*
*v.*
*Anissa De La Cruz, et al.*

United States District Court for the Eastern District of California, Fresno Division
Case No. 1:25-cv-00610-JLT-HBK

* * *

On August 2, 2024, incarcerated persons assigned to Housing Unit 513 on Facility D at the Central California Women's Facility (CCWF) operated by the California Department of Corrections and Rehabilitation (CDCR) were moved to the Facility D Dining Hall (Building 701) during a search of Housing Unit 513 and then moved to the Yard area on Facility D. Following several disturbances by incarcerated persons in the Dining Hall, chemical agents and physical force were used in the Dining Hall and/or on the Yard area.

On May 22, 2025, Alexis Hooper, one of the affected incarcerated persons, filed a federal class action civil rights complaint on behalf of herself and of all persons who were similarly situated alleging claims for excessive force based on the August 2, 2024 incident. After exchange of information and mediation using the services of retired United States Magistrate Judge Kendall J. Newman, the parties have reached a settlement of the action, pending Court approval and as described in this Notice.

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE PROPOSED SETTLEMENT IF THE COURT APPROVES IT.**

The United States District Court for the Eastern District of California (Fresno Division) ordered that this notice be given to all incarcerated persons in the Settlement Class, who have not previously settled or released their claims, who were assigned to Housing Unit 513 on Facility D at CCWF on August 2, 2024, were relocated to the Dining Hall (Building 701) and then the Yard area, and who were exposed to alleged uses of excessive force, including but not limited to, exposure to chemical agents and physical force, whether in the Dining Hall or on the Yard area on August 2, 2024 (Settlement Class Members).

The settlement, if approved by the Court, will resolve this class action lawsuit. Under the terms of the proposed settlement, as described in this notice and the Settlement Agreement entered into by the parties, a total sum of $10,000,000 will be paid by CDCR to compensate all incarcerated persons in the Settlement Class, who have not previously settled or released their claims and who do not request to be excluded ("opt-out") from the settlement, as well as to pay attorneys' fees and costs and the expenses of administering the class settlement as ordered by the Court. **All class members who do not request to be excluded from the settlement will**

**receive compensation without the need to file a claim. Those class members who believe they are entitled to enhanced compensation will be required to submit a Claim Form, provided with this notice, by the Claim Deadline, explaining the circumstances they feel would entitle them to enhanced compensation.**

**1. What is this lawsuit about?**

On August 2, 2024, incarcerated persons assigned to Housing Unit 513 at CCWF were removed from their cells to facilitate a search of their cells for suspected contraband. The incarcerated persons were relocated to the Dining Hall (Building 701) on Facility D during the search. The Complaint alleges the incarcerated persons were denied food and medication in the Dining Hall, and that after a disturbance arose in the Dining Hall, excessive force, including but not limited to chemical agents, was utilized by CDCR staff in the Dining Hall. The Complaint further alleges that the incarcerated persons were handcuffed and moved to the Yard area on Facility D, where they were again exposed to chemical agents, or subjected to excessive physical force while being removed from the Dining Hall to the Yard area. The Complaint alleges that some of the incarcerated persons were mobility impaired, with some using walkers or wheelchairs, and that some were particularly vulnerable to chemical agents, having been diagnosed with asthma or other pulmonary conditions; some received medical treatment after the August 2, 2024 incident, and some claim to still suffer from injuries they received that day. Plaintiff Alexis Hooper (Plaintiff), filed a class action lawsuit in the United States District Court seeking compensation for all who, like her, were present during in the August 2, 2024 use-of-force incident.

**2. What is a class action and why is this a class action?**

In a class action lawsuit, one or more people called “Class Representatives” attempt to sue on behalf of other people (the “Class”) who were similarly situated and may have similar claims. If a court approves of the case proceeding as a “class action,” that court decides the issues in the lawsuit for everyone in the Class. In this case, the Class Representative (Plaintiff Alexis Hooper) and Defendants have reached a settlement, subject to Court approval, to stipulate to a class action for the purposes of settlement and for CDCR to pay compensation to persons involved in the August 2, 2024 incident. The Court certified the case as a class action solely for purposes of deciding whether to approve the settlement. That means that if the settlement is not finally approved by the Court, the Class Members will not receive compensation in this action, and the Plaintiff will need to go back to Court to prove the case and try to show she has the right to bring this case as a Class Action.

**3. Why is there a settlement?**

Plaintiff and the Defendants have decided that, in the interests of justly and efficiently resolving all of the claims of the incarcerated persons involved in the August 2, 2024 incident, it would be appropriate to create a fund from which all members in the Settlement Class, who have not previously settled or released their claims, would be compensated without the need for each person to initiate their own lawsuit to seek compensation. The parties’ decision to resolve the

claims does not mean that Defendants have admitted fault or wrongdoing, or accepted liability, for the August 2, 2024 incident. Settlement would considerably expedite the conclusion of the litigation and would get compensation into the hands of the Settlement Class sooner than would result if the case were litigated to a conclusion, which could take several years.

**4. As a Settlement Class Member, what are my options?**

**As a Settlement Class Member, you may do nothing and, if the settlement is approved, you will receive compensation without needing to file a claim form.** If, on the other hand, you do not want to participate in the settlement, you must opt-out of the settlement by submitting a request to be excluded by the opt-out date. Instructions on how to opt-out of the settlement are below.

If you believe that you may be entitled to enhanced compensation, you will need to complete and file a Claim Form, under penalty of perjury, on which you will explain your reasons for believing you are entitled to enhanced compensation.

If you do not opt-out of the settlement, but still want to object to the settlement, you can do so by filing an objection by the objection date. Instructions on how to file an objection to the settlement are below.

**5. What will I get from the settlement?**

Under the terms of the settlement, after payment of costs and attorneys' fees to the attorneys representing Plaintiff and the Class, payment of the expenses of administering the settlement, and the incentive fee for the Class Representative, there will be a fund of approximately $7,400,000 available for distribution to the Settlement Class Members. If no one requested and was approved for enhanced compensation, the compensation paid to each class member would be approximately $52,100.

**If you are still in custody or otherwise under the supervision of CDCR and you owe restitution or liens, then those amounts will be deducted first from your individual payment to pay those obligations. Under California Penal Code section 2085.8, CDCR is obligated by law to pay any outstanding restitution or liens it is aware of from any settlement received by an incarcerated person.**

**6. When will I get my payment?**

A Final Approval Hearing is currently scheduled for XXX, which may change without notice to the class. If the Court approves the proposed settlement at the Final Approval Hearing, and if no appeal is taken, settlement checks will be distributed within XXX days of the expiration of the time for filing an appeal, or resolution of any claims for enhanced compensation that remain disputed. If an appeal is taken, no settlement funds will be distributed until and unless the appeal is finally determined in favor of the settlement.

**7. Am I giving up anything by remaining in the Settlement Class?**

Yes, unless you timely request to be excluded ("opt out") from the settlement, you will be part of the settlement and will be giving up the right to sue the Defendants separately from the class action, including but not limited to, any claims for alleged physical injuries, mental or emotional injuries, or claims for loss or destruction of property, loss of income, or any other losses, you may now or in the future attribute to the August 2, 2024 incident.

**8. Can I tell the Court I do not like the settlement?**

Yes, even if you do not exclude yourself from the Settlement Class, you may tell the Court that you do not like the settlement or some part of it by filing an objection. You may object to any of the terms of the settlement. Your objection must be filed with the Court and provided to the Settlement Administrator by XXX.

**9. How do I object to the Settlement?**

You (or, if you have an attorney, your attorney) must file a written statement, personally signed, stating that you are a potential Class Member, and providing the following: (i) your full name, current address, and current telephone number; (ii) the case name and number of the action identified on the first page of this notice; (iii) a statement of the position(s) you wish to assert, including the factual and legal grounds for the position; (iv) copies of any other documents that you wish to submit in support of your position; (v) whether you intend to appear at the Final Approval Hearing; and (vi) whether you are represented by counsel and, if so, the name, address, and telephone number of your counsel.

You must send a copy of this objection, via First Class U.S. mail, and postmarked by XXX, to the Settlement Administrator as follows:

XXX
XXX
XXX

**10. Can I still receive a settlement award if I object to the settlement?**

If you object to the settlement, you may still obtain a settlement award if the Court approves the settlement despite your objection and you do not timely request to be excluded ("opt out") from the settlement. If the Court agrees with your objection and does not approve the settlement, you and other members of the Settlement Class will not receive a settlement award from the settlement because the settlement agreement will not become effective.

**11. Can I appear at the settlement hearing?**

You may attend the settlement hearing because it will be held in open court. If you are still in custody, your attendance will be via video appearance. If you want to speak at the settlement hearing (called "making an appearance") you must notify Class Counsel and Defense Counsel, in writing, by [DATE] of your desire to speak at the settlement hearing.

**12. Do I have to participate in the settlement?**

If you do not want to be a part of the settlement, you must take action to be removed as a Settlement Class Member from the settlement. This is called "excluding yourself" or "opting out." If you exclude yourself from the settlement, you will not be eligible to receive any monetary compensation under the settlement, nor will you be entitled to object to the settlement. If you exclude yourself from the settlement, you will not be bound by any judgment or settlement of the case and will keep your right to sue the Defendants separately from the class. If you exclude yourself, you may want to consult an attorney of your choice with respect to potential claims.

**13. How can I exclude myself from the settlement?**

To exclude yourself from the settlement, you must submit a request to be excluded in writing by XX to the Settlement Administrator at their address listed above. To be effective the written request must contain your name, address, and telephone number, must be submitted by First Class U.S. mail, and be postmarked by XX. **If you fail to submit a valid and timely written request for exclusion in this manner, you will be bound by the settlement.**

**14. What if I do nothing?**

If you do nothing, you will be considered entitled to compensation under the settlement, subject to any outstanding restitution or liens owed by you, and you will receive payment via your inmate trust account if still incarcerated or at your last known address or at any address you provide in writing to the Settlement Administrator.

**15. What will Class Counsel get from this Settlement?**

The settlement provides that, subject to Court approval, Class Counsel will receive a payment of 25% of the settlement fund ($2,500,000) for attorneys' fees and to reimburse the firm for its costs and for the work required to be done in the future to finalize the settlement.

**16. Why is the Class Representative entitled to an Incentive Fee?**

The Class Representative is entitled to receive an incentive fee in the amount of up to $25,000, which must be approved by the Court. The incentive fee compensates the Class Representative for her efforts in obtaining the benefits of the settlement for the settlement class members, and in acting as a representative plaintiff in this case.

**17. When will the settlement be final?**

The Court has tentatively scheduled a final settlement approval hearing to be held on XX, at XXX a.m./p.m. before the Honorable XX in Courtroom XX of the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721. At the final hearing, the Court will resolve any objections and decide whether to approve the settlement, the requested award of attorneys' fees and expenses, expenses for administration of the settlement, and the award of an incentive fee to the Class Representative for prosecuting this litigation. You may, but do not have to, attend the final approval hearing. **You do not need to attend the final hearing to receive an award from the settlement fund**. After the Court rules on the final approval and either the time to appeal from the final approval has expired or any appeal filed has been resolved in favor of the settlement, the settlement will become final**. Only after the settlement is final, can the settlement awards be distributed**.

**18. Where can I get more information about this case and what has occurred?**

This Notice contains only a summary of the lawsuit and settlement. For more detailed information you may contact Class Counsel Mark E. Merin or Paul H. Masuhara, Law Office of Mark E. Merin, 1010 F Street, Suite 300, Sacramento, CA 95814, mark@markmerin.com, paul@markmerin.com, Telephone: (916) 443-6911. You can also obtain information about this lawsuit and settlement by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.caed.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Eastern District of California

* * *

**PLEASE DO NOT TELEPHONE OR CONTACT THE COURT ABOUT THIS PROPOSED SETTLEMENT.**

* * *

# ATTACHMENT 4

**DRAFT – Settlement Award Calculation Method**

Purpose:

Within ten (10) days of the Claim Deadline, the Settlement Administrator must examine the claims submitted for enhanced compensation and determine whether the claimant qualifies for enhanced compensation. (Class Action Settlement Agreement and Release, paragraph 11 (b) (ii).)

The purpose of the Settlement Award Calculation Method is to provide guidance only to the Settlement Administrator as to how to determine whether or not any claim submitted for enhanced compensation qualifies for enhanced compensation. No representation is made or implied by this guidance that any claimant will or will not be awarded enhanced compensation. The Settlement Administrator will determine each claim based on the information and documents, if any, submitted by each claimant and any other information the Administrator may request or receive.

Procedure:

**A. Evaluating the Claim Form**

1. Examine the claim form to ensure it is signed; if it is not, return the claim form to the claimant with instructions to sign it and resubmit it before the claim deadline.
2. Review the claim form and documents submitted by the claimant to determine whether a request for specific records from CDCR is necessary.
3. If the "yes" box is checked in response to Question No. 2:
    a. Review any documents provided by the claimant to determine if the records reflect a diagnosis of asthma or other pulmonary condition as of August 2, 2024. If such condition is reflected in the records, this claimant qualifies for enhanced compensation.
    b. If there is no record provided of such diagnosis and the Claimant has provided information in response to the sub-questions, the Settlement Administrator may make a request for specific records to CDCR to assist in determining whether the Claimant qualifies for enhanced compensation.
4. If the "yes" box is checked in response to Question No. 3:

a. Review any documents provided by the claimant to determine if the records reflect that the claimant was designated as “mobility impaired” as of August 2, 2024. If such designation is reflected in the records, this claimant qualifies for enhanced compensation.
b. If there is no record provided of such designation and the Claimant has provided information in response to the sub-questions, the Settlement Administrator may make a request for specific records to CDCR to assist in determining whether the Claimant qualifies for enhanced compensation.
c. If there is no record of such designation, and the claimant has not checked the ”yes” box to the subordinate question, the claim should be denied unless it qualifies for enhanced compensation on any other basis.

5. If the “yes” box is checked in response to Question No 4 and the claimant provides the name(s) of two witnesses, the claimant may qualify for enhanced compensation. If no witness names were provided, the claim for enhanced compensation should be denied unless it qualifies for enhanced compensation on any other basis. The Settlement Administrator may make a request for specific records to CDCR to assist in determining whether the Claimant qualifies for enhanced compensation.
6. If the “yes” box is checked in response to Question No. 5 and the claimant provides the name(s) of two witnesses, the claimant may qualify for enhanced compensation. If no witness names were provided, the claim for enhanced compensation should be denied unless it qualifies for enhanced compensation on any other basis. The Settlement Administrator may make a request for specific records to CDCR to assist in determining whether the Claimant qualifies for enhanced compensation.
7. If the “yes” box is checked in response to Question No. 6:
   a. Review any documents provided by the claimant to determine if the records reflect that medical care was provided to the claimant on or following August 2, 2024 for injuries or conditions relating to the August 2, 2024 incident. If the materials reflect that medical care was provided, the claimant qualifies for enhanced compensation.
   b. If there is no record provided of such medical care and the Claimant has provided information in response to the sub-questions, the

Settlement Administrator may make a request for specific records to CDCR to assist in determining whether the Claimant qualifies for enhanced compensation.

c. If the claimant did not provide information in response to the sub-questions, the claim for enhanced compensation should be denied unless it qualifies for enhanced compensation on any other basis.

8. If the "yes" box is checked in response to Question No. 7 and the claimant has provided information in response to the sub-questions, provided the name of two witnesses, and provided documentation to support their claim, the claimant qualifies for enhanced compensation. If no documentation is provided, the Settlement Administrator may make a request for specific records to CDCR to assist in determining whether the Claimant qualifies for enhanced compensation. If no information is provided in response to the sub-questions, the claim for enhanced compensation should be denied unless it qualifies for enhanced compensation on any other basis.
9. If a claim for enhanced compensation qualifies on any basis, regardless of the claimant's failure to provide requested information as to other questions, it qualifies for enhanced compensation.

**B. Notifying Claimants Who Submit Claims for Enhanced Compensation**

1. Promptly after reviewing a claim for enhanced compensation that has not been approved, the Settlement Administrator shall notify the claimant that the claim has been rejected and shall indicate the reason(s), such as "failure to provide witness information" in response to any question which required such information, or "failure to provide medical care information." The claimant shall be informed that an amended claim with the required information must be submitted before the claim deadline.
2. Within thirty (30) days after the claim deadline, the Settlement Administrator shall notify all class members who submit claims for enhanced compensation of the decision as to their individual claims. (Settlement Agreement, Paragraph 11 (b) (ii).)

Any questions as to how to address issues not covered in this document should be directed to Class Counsel, Mark E. Merin at (916) 443-6911.